563 So.2d 73 (1990)
John D. FREEMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 73299.
Supreme Court of Florida.
May 31, 1990.
Rehearing Denied July 27, 1990.
*74 Barbara M. Linthicum, Public Defender, and Paula S. Saunders, Asst. Public Defender, Tallahassee, for appellant.
Robert M. Butterworth, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Freeman was convicted of the first-degree felony murder of Leonard Collier and of burglary with an assault. We review his conviction and sentence of death for the murder. We have jurisdiction pursuant to *75 article V, section 3(b)(1), of the Florida Constitution.
At trial, Collier's neighbor, Harold Hopkins, testified that on November 11, 1986, he heard a shot, a loud crack, and then Collier calling for help. He looked across the street and saw a man repeatedly striking Collier on the head with an object as Collier was trying to crawl away. Hopkins called the police. When the police arrived, Collier told them that he had walked in his house and had been jumped by a man behind the front door. Collier said he and the man then fought on the front porch, and Collier believed he had been shot. The police searched the house and found it had been ransacked.
A short time later, Freeman was apprehended hiding under a dock down the street from Collier's home. A man who had been standing on the dock testified that Freeman told him that he had had a fight with someone down the street and that the police were looking for him. After being arrested and advised of his rights, Freeman was driven back to Collier's home where Hopkins identified Freeman as Collier's assailant. Freeman then told the police that he had broken into the house and stolen a few items. He stated that Collier surprised him when he entered the house and that he thought Collier was going to shoot him. He said they struggled, a shot was fired, and they then struggled out the front door where Collier hit his head on the concrete.
Later, at the police station, Freeman waived his rights and admitted to burglarizing the house. He stated that Collier surprised him and then pointed a gun at him to keep him from leaving. Freeman said that he grabbed the gun, struggled with Collier, and then the gun discharged. They fell out of the house into the yard where Freeman said he hit Collier twice with the gun and then fled. The medical examiner testified that Collier was struck around the head approximately twelve times but had not been shot. Collier died from profuse bleeding several hours after the assault.
The trial judge imposed the death sentence after a nine-to-three jury recommendation of death. In his sentencing order, the judge found three aggravating circumstances, specifically: (1) Freeman had previously been convicted of the crimes of first-degree murder, armed robbery, and burglary to a dwelling with an assault, all of which had been committed just three weeks before the killing of Collier; see Freeman v. State, 547 So.2d 125 (Fla. 1989); (2) the murder occurred while Freeman was committing a burglary to a dwelling; and (3) the murder was committed for pecuniary gain. The judge found the second and third aggravating factors merged into one. Although the judge did not find any statutory mitigating factors to be present, he did find in nonstatutory mitigation that Freeman was of low intelligence, had been abused by his stepfather, possessed some artistic ability, and enjoyed playing with children. After weighing these factors, the judge found the death penalty to be appropriate.
While Freeman does not challenge his guilt, we have reviewed the evidence and find it sufficient to sustain the conviction. However, he does raise several issues with respect to his death sentence.
Freeman argues that it was error under Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), for the state to have presented the testimony of Debra Epps at the penalty phase. Ms. Epps testified that Freeman was the man who had been previously convicted of killing her husband. See Freeman, 547 So.2d 125. At the beginning of her testimony, the following exchange took place between the prosecutor and Ms. Epps:
Q: What is your occupation, Ms. Epps?
A: I am currently in a supervisory position with Internal Revenue in the taxpayers service division.
Q: How long have you been with the IRS?
A: About 15 years.
Q: Do you have any children?
A: Yes.
At this point defense counsel objected to the testimony and moved for a mistrial. *76 The trial judge sustained the objection but refused to grant a mistrial. He then instructed the jury to disregard the last few comments of the witness. Ms. Epps then continued her testimony, relating that Freeman was the man convicted of her husband's murder and describing some details of the murder.
We agree that Ms. Epps should not have been called to testify concerning her husband's death.[1] While the details of a prior felony conviction are admissible to prove this aggravating factor, Perri v. State, 441 So.2d 606 (Fla. 1983), Ms. Epps was not present when her husband was killed and, therefore, her testimony was not essential to this proof. However, defense counsel objected only to the content of Ms. Epps' testimony concerning her employment and children and not to the fact that Ms. Epps herself was testifying to the prior conviction. The trial judge issued a curative instruction concerning this point. Most significantly, we note that Ms. Epps' testimony concerning her husband's death was brief, straightforward, and very general. We conclude beyond a reasonable doubt that without Ms. Epps' testimony the jury would still have recommended the death penalty, and the trial judge would have imposed it.
We next turn to Freeman's contention that the prosecutor made impermissible comments during closing argument during the penalty proceeding. We have carefully reviewed the closing argument and cannot say that reversible error was committed. The prosecutor's repeated comparison of the Epps and Collier murders was legitimate. His references to Collier and Epps as homeowners were little more than innocuous comments on the evidence. He should not have referred to Ms. Epps' children, but defense counsel's objection was sustained, and the trial judge instructed the jury to disregard the comment. We do agree that in asking the rhetorical question of "How many times is this going to happen to this defendant?" following a discussion of the Collier and Epps murders, the prosecutor impermissibly implied that Freeman was likely to commit future crimes if not incarcerated. However, there was no objection to the comment, and its potential for prejudice falls far short of the circumstances which required this Court to reverse for a new sentencing proceeding in Teffeteller v. State, 439 So.2d 840 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984).[2]
Next, we turn to Freeman's claim that the jury instruction on the aggravating factor of especially heinous, atrocious, and cruel was unconstitutionally vague under Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). When defense counsel initially objected to the instruction on this factor, the trial judge agreed to modify the instruction based on the language of State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Because no further objection was made, this issue was not properly preserved for appeal. Further, we find the instruction did sufficiently limit the jury's discretion. See Smalley v. State, 546 So.2d 720 (Fla. 1989).
Freeman further contends that the death penalty is proportionally unwarranted in his case. Yet, the cases cited in *77 support of his argument are substantially distinguishable. Following the merger of pecuniary gain and burglary, there remained two statutory aggravating circumstances. One of these was a prior murder. There were no statutory mitigating circumstances, and the nonstatutory mitigating circumstances were not compelling. The trial judge carefully weighed the aggravating and mitigating circumstances and concluded that death was the appropriate penalty. It is not this Court's function to reweigh these circumstances. Hudson v. State, 538 So.2d 829 (Fla.), cert. denied, ___ U.S. ___, 110 S.Ct. 212, 107 L.Ed.2d 165 (1989). Freeman's death sentence is not disproportionate to other cases. Compare Proffitt v. State, 510 So.2d 896 (Fla. 1987) with Mason v. State, 438 So.2d 374 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984).
Freeman's final claim is that his sentence must be vacated and remanded if his prior conviction is reversed by this Court. This claim is now moot because we have affirmed Freeman's prior conviction. Freeman, 547 So.2d at 125.
Accordingly, we affirm Freeman's conviction and sentence.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The present circumstance can be roughly analogized to the rule which precludes a member of a murder victim's family from testifying for the purpose of identifying the deceased where a nonrelated witness is available to provide such information. See Lewis v. State, 377 So.2d 640 (Fla. 1979).
[2] In Teffeteller v. State, 439 So.2d 840, 845 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984), the prosecutor argued:

"[T]his Defendant will kill again if he is given a chance. I don't see how you can find otherwise.
Don't give him that chance. Don't have to realize after he is paroled and after he kills someone else, perhaps Donald Poteet, perhaps Rick Kuykendall or who knows who he will go after.
* * * * * *
Know that your determination will have a deterring effect on this Defendant and know that it will keep him from being able to kill again. Don't let it happen. Don't let it happen. Don't let Robert Teffeteller kill again."