858 So.2d 319 (2003)
John D. FREEMAN, Appellant,
v.
STATE of Florida, Appellee.
No. SC01-2007.
Supreme Court of Florida.
July 11, 2003.
Rehearing Denied November 25, 2003.
*321 Michael P. Reiter, Capital Collateral Regional Counsel-North, Harry P. Brody, Assistant CCRC-N and Jeffrey M. Hazen, Assistant CCRC-N, Office of the Capital Collateral Regional Counsel-North, Tallahassee, FL; and Frank J. Tassone, Jr., Registry Counsel, Jacksonville, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, and Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, FL, for Appellee.
PER CURIAM.
John D. Freeman (Freeman), a death row inmate, appeals an order of the trial court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons more fully set forth below, we affirm the trial court's denial of relief.
The facts, as set forth in Freeman v. State, 761 So.2d 1055 (Fla.2000), are as follows:
John D. Freeman (Freeman) was convicted of first-degree felony murder for the 1986 killing of Leonard Collier (Collier). Freeman was sentenced to death, and both the conviction and sentence were affirmed on appeal. See Freeman v. State, 563 So.2d 73 (Fla.1990). Collier caught Freeman in the act of burglarizing his home. Freeman claimed that Collier pointed a gun at him and threatened to shoot him to prevent his escape. The two struggled over the gun and fell outside into the front yard. When Freeman obtained possession of the gun, he used the gun to repeatedly strike Collier in the head ten to twelve times. Collier died from the head wounds.
Id. at 1058. The Collier murder was the second murder that Freeman committed within twenty-two days. The first murder was committed in a similar mannerthe victim, Alvin Epps (Epps), came home to find Freeman burglarizing his home and *322 Freeman stabbed him to death. In the Epps case, Freeman was convicted of first-degree murder, the jury recommended a life sentence, the judge overrode the jury recommendation, and this Court reversed the override. Freeman v. State, 547 So.2d 125 (Fla.1989).
After Freeman's direct appeal was concluded in the Collier murder, he filed a motion for postconviction relief, which the trial court summarily denied. See Freeman v. State, 761 So.2d 1055 (Fla.2000). Freeman appealed the summary denial of his postconviction motion to this Court, and also filed a petition for a writ of habeas corpus. The cases were consolidated for our consideration. After considering Freeman's appeal, we remanded Freeman's 3.850 motion for an evidentiary hearing on his claim of ineffective assistance of counsel. See id. In all other respects, we affirmed the trial court's denial of Freeman's postconviction motion. We also denied Freeman's petition for a writ of habeas corpus. See id.
The trial court conducted an evidentiary hearing on the remanded claim and denied relief. Freeman now appeals that denial, raising two claims of ineffective assistance of counsel: whether trial counsel was ineffective in the guilt phase trial for failing to object to the State's alleged improper reliance on racial factors in seeking the death penalty, and whether trial counsel was ineffective in the penalty phase trial for failure to present evidence in mitigation. For the reasons explained below, we affirm the trial court's denial of relief.

Ineffective Assistance at Guilt Phase Trial
Freeman alleges defense counsel was ineffective for failing to argue that the State's decision to pursue the death penalty was based upon improper racial considerations. He claims the prosecutor rejected Freeman's offer to plead guilty in the Epps and Collier cases in exchange for two consecutive life sentences because the State needed to seek the death penalty in more cases where Caucasian defendants killed African-American victims.
Although the decision to seek the death penalty is within the prosecutor's discretion, that discretion may be curbed by the judiciary where motives such as bad faith, race, religion, or a desire to prevent the defendant from exercising his constitutional rights contributes to the prosecutor's decision. See State v. Bloom, 497 So.2d 2, 3 (Fla.1986). Freeman claims that race was the motive behind the prosecutor's decision to seek the death penalty in this case.
At the evidentiary hearing, Freeman presented the testimony of then Assistant State Attorney John Bradford Stetson, Jr., State Attorney Ed Austin, Assistant Public Defender Ann Finnell (who was Freeman's co-counsel at the Epps trial), and Assistant Public Defender Patrick McGuinness (Freeman's trial counsel for both the Collier and Epps murders). The testimony showed that prior to trial, Freeman's trial counsel approached the prosecutor with an offer to plead guilty to both the Epps and Collier murders in exchange for two consecutive life sentences with twenty-five-year mandatory minimum terms. The testimony showed that both parties were aware of the then pending federal case, McCleskey v. Kemp, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). McCleskey involved an allegation that prosecutors were seeking the death penalty disproportionally against African-American defendants. Freeman alleges that when his trial counsel presented the plea offer to the prosecutor, the prosecutor refused the offer for fear that defense attorneys in other cases would argue that he was favoring Caucasian *323 defendants. Freeman argues that the State relied on race in making its decision, that the reliance created a reverse-McCleskey claim, and that trial counsel was ineffective for failing to raise the claim because he admittedly did not know how to do so.
The trial court found that, although the prosecutor's response to defense counsel's plea offer was "a somewhat ill-considered retort," the evidence demonstrated that the State did not pursue the death penalty based on Freeman's race. The evidence the trial court relied upon included the testimony of Ed Austin, the State Attorney at the time of trial. Austin stated that his office never prosecuted a defendant based on his or her race. Austin also stated that although he had no recollection of Freeman's case, at the time of Freeman's trial it was standard policy for him to discuss the case with the prosecutor and determine the elements of the crime, the aggravation and mitigation, and whether the State should go forward and seek the death penalty. Austin commented on the ongoing accusations that his office too often sought the death penalty in cases where the victims were Caucasian and the defendants were African-American. He stated there were a lot of newspaper articles criticizing the State Attorney's Office, but those accusations had nothing to do with the decision to file and prosecute a homicide as a first-degree murder case. The decision to seek the death penalty, Austin stated, was made on the basis of the facts of the case. When Austin was asked about the public's perception of the State Attorney's Office, he stated that perceptions have nothing to do with how a case is prosecuted, or the decision to seek the death penalty, or whether there is aggravation that outweighs mitigation. Austin stated that the only time race is considered in the prosecution is if race is an element of the crime, and that during his tenure as a State Attorney, his office never filed a case for the wrong reasons. The cases were filed based on the law. Prosecutor Stetson also testified at the evidentiary hearing. He stated that under the facts of this case, irrespective of race, the aggravating circumstances clearly supported the decision to seek the death penalty.
For ineffective assistance of counsel claims raised in postconviction proceedings, the appellate court affords deference to findings of fact based on competent, substantial evidence and independently reviews deficiency and prejudice as mixed questions of law and fact. See Stephens v. State, 748 So.2d 1028, 1033-34 (Fla.2000) (setting forth standard of appellate review following an evidentiary hearing on motion based on ineffective assistance of counsel claims); see also State v. Riechmann, 777 So.2d 342 (Fla.2000); Cherry v. State, 781 So.2d 1040, 1048 (Fla.2000) ("[W]e review the prongs of ... ineffective assistance of counsel as questions of mixed law and fact."). Therefore, we give deference to the findings of fact regarding the conversations between the prosecutor and defense counsel, the conversations between the prosecutor and the State Attorney, and the testimony as to how and why the State chose to seek the death penalty in this case. The trial court's finding that the State did not prosecute Freeman because of his race is based on competent, substantial evidence in the record.
Next, we review whether these findings constitute a deficiency in performance that prejudiced Freeman. This Court reviews de novo the issue of whether defense counsel was deficient at trial and, if so, whether the defendant was prejudiced. See Stephens, 748 So.2d at 1033-34. Freeman argues that defense counsel was ineffective because he admittedly did *324 not know what legal mechanism to employ to address the issue of the prosecutor's perceived reliance on race as a factor in the decision to seek the death penalty.
As stated in Stewart v. State, 801 So.2d 59, 64-65 (Fla.2001), for a defendant to succeed in his ineffectiveness claims, he must satisfy two elements: first, he must show that counsel's performance was deficient; and second, he must show that the deficient performance prejudiced the defense. In order to prove these elements, a defendant must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment and that counsel's errors were so serious as to deprive the defendant of a fair trial where the result is reliable. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "[W]hen a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong." Stewart, 801 So.2d at 65; see also Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an effective assistance claim... to address both components of the inquiry if the defendant makes an insufficient showing on one."); Downs v. State, 740 So.2d 506, 518 n. 19 (Fla.1999) (finding no need to address prejudice prong where defendant failed to establish deficient performance prong).
Even if we assume defense counsel was deficient in his inability to address this issue at the time of trial, Freeman has failed to establish that the State relied on race when it decided to seek the death penalty, and thus has not demonstrated prejudice. The testimony establishes only that the prosecutor was aware of the McCleskey issue and perceptions and accusations made about his office. State Attorney Austin confirmed that race was not a factor in deciding to seek the death penalty in Freeman's case. The trial court accepted this testimony as true, and there is nothing in the record to refute it. The trial court's finding that the prosecutor did not rely on this defendant's race in seeking the death penalty is supported by the competent, substantial evidence in the record. Therefore, we find no error in the trial court's denial of relief on this claim.

Ineffective Assistance of Counsel at the Penalty Phase Trial
Freeman claims defense counsel was ineffective in the penalty phase trial for failing to investigate and present to the jury mitigating evidence from friends and family about Freeman's abusive home life, for failing to have mental health experts review his family history and present this evidence along with evidence of alcohol and drug abuse, and for failing to present the live testimony of David Sorrells, Freeman's best friend, who would have testified to abuse Freeman suffered as a child.
As stated above, for Freeman to succeed on an ineffectiveness claim, two elements must be satisfied. First, he must show that counsel's performance was deficient, or that counsel made errors so serious that he or she did not function as the "counsel" guaranteed by the Sixth Amendment. Second, he must show that the deficient performance prejudiced the defense. See Stewart v. State, 801 So.2d 59, 64-65 (Fla.2001). This second prong requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The trial court considered each of the alleged deficiencies and found that trial counsel was not deficient. We agree.
*325 Lay Witnesses
Defense counsel McGuinness testified at the evidentiary hearing that he made the decision to present the same mitigation at this trial as he presented in the Epps trial since, in the Epps trial, the jury recommended a sentence of life imprisonment. The only witnesses he called in the penalty phase were Mary Freeman (Freeman's mother), Robert Jewell (Freeman's brother), and David Sorrells (Freeman's friend). Sorrells did not testify live at the trial, but the transcript of his testimony from the Epps trial was read to the jury. Defense counsel stated that he believed part of the evidence in the penalty phase trial included evidence that Freeman was abused by his stepfather. As for evidence that Freeman's sister was sexually abused by Freeman's stepfather, defense counsel testified that he did not have this information, and he admitted he never spoke to Freeman's sister. He stated that he would have put on evidence of the sexual abuse only if he could have linked it to Freeman. He also stated that he knew of Freeman's use of drugs and alcohol, but did not use that information in mitigation because he could not link it to the crime. He admitted that perhaps he should have "delved" more deeply into Freeman's drug and alcohol use.
Freeman argues that defense counsel should have presented more evidence in mitigation, arguing that the result at trial would have been different if the jury had heard about the scope of physical and sexual abuse in the Freeman household.
The facts do not support the allegation that Freeman was sexually abused or was aware that his sister was sexually abused. To find that trial counsel was deficient in failing to present evidence of physical and sexual abuse, Freeman must first show that a reasonable investigation would have uncovered the evidence. See Gorby v. State, 819 So.2d 664, 676 n. 11 (Fla.2002) (finding that trial counsel was not ineffective for not presenting evidence of the defendant's childhood sexual abuse where there was no evidence that such abuse occurred). The record in this case does not demonstrate that any of the witnesses or potential witnesses knew of the evidence of sexual abuse or would have told defense counsel about it if they did know. Freeman's sister testified at the evidentiary hearing that she kept the abuse to herself until "later." She testified that her mother knew of the abuse at the time of Freeman's trial, but Freeman's mother did not volunteer this information to counsel.
The trial court found that the testimony presented at the evidentiary hearing did not demonstrate physical abuse to the extent Freeman claims it occurred during his childhood. Each witness testified to single incidents of punishment that each said occurred after Freeman misbehaved. The trial court acknowledged the testimony of Freeman's neighbors, Mary Holliman and Bobbie Hart, who both described an incident where Freeman was whipped with a rubber hose. However, the severity of Freeman's claimed abuse was tempered by the testimony of Mitchell Tanner and Dwayne Watson, who stated that Freeman grew up like "all the rest of us," that Freeman got into trouble and stayed out with his friends past his curfew, and that Freeman knew when he went home he would have to face his stepfather. Freeman's neighbor, James Holliman, testified that he would hear Freeman and his brother yell, "I won't do it anymore." And Freeman's aunt, Sonja Bigdon, testified that Freeman's stepfather yelled, as did Freeman's mother, but that his stepfather loved Freeman in his own way and was good to Freeman at times.
*326 While additional evidence regarding specific examples of abuse could have been presented, that is not the standard Strickland contemplates in evaluating counsel's performance. See Gudinas v. State, 816 So.2d 1095, 1106 (Fla.2002) (finding that trial counsel was not ineffective for failing to present evidence in mitigation that was cumulative to evidence already presented in mitigation); see also Cherry v. State, 781 So.2d 1040, 1051 (Fla.2000) ("[E]ven if trial counsel should have presented witnesses to testify about Cherry's abusive background, most of the testimony now offered by Cherry is cumulative.... Although witnesses provided specific instances of abuse, such evidence merely would have lent further support to the conclusion that Cherry was abused by his father, a fact already known to the jury.").
The trial court acknowledged that the witnesses' combined testimony demonstrated that Freeman's stepfather was overly zealous in his punishment, but the court also noted that the punishment described in the testimony was in response to Freeman's misbehavior. Further, as the trial court found, the information presented at the evidentiary hearing was "largely cumulative" to that evidence presented at trial, and that the combined testimony would not have outweighed the statutory aggravating circumstances.
It is clear from the testimony that Freeman suffered some physical abuse at the hand of his stepfather. In fact, the jury recommendation of life in the Epps trial was based in part on the "history of abuse during Freeman's childhood." Freeman, 547 So.2d at 129. However, the fact that Freeman was physically abused by his stepfather was a fact made clear to this jury at trial. Freeman's brother and mother, as well as Dr. Louis Legum, a mental health expert, told the jury that Freeman was abused by his stepfather. In fact, the trial court accepted the nonstatutory mitigating factor of abuse by Freeman's stepfather.
Although the evidence presented at the postconviction hearing may have painted a clearer picture as to the extent of the abuse, trial counsel is not ineffective if he adequately made the point. See Jennings v. State, 583 So.2d 316, 321 (Fla. 1991) ("It is not negligent to fail to call everyone who may have information about an event. Once counsel puts on evidence sufficient, if believed by the jury, to establish his point, he need not call every witness whose testimony might bolster his position."). Even if counsel's failure to demonstrate the abuse with greater detail can be considered error, it would be harmless because the abuse Freeman suffered as a child was found as a mitigating factor.
Expert Testimony
Freeman also called a number of friends and family members to testify at the evidentiary hearing. The testimony showed that Freeman suffered a head injury when a neighbor accidently backed over him with a car when he was about two years old, and another head injury after falling off a bicycle. At the evidentiary hearing, defense counsel testified that there were no medical records available to indicate the nature or severity of either of the head injuries, the hospital records had been destroyed, and the treating physician had no recollection of the injuries. Freeman then presented Dr. James E. Larson as an expert witness in forensic psychology to testify that Freeman suffered from a "mild neuropsychological impairment" and a "learning disability." Dr. Larson administered certain tests to Freeman and testified that Freeman performed poorly.
The trial court found that there was no materially significant information Dr. Larson possessed that defense counsel did not *327 provide to Dr. Legum at trial. The trial court also held that because Dr. Legum did not testify at the evidentiary hearing, there was no evidence that Dr. Legum's testimony at trial would have been any different had he been given Dr. Larson's information. Based on these facts, the trial court found that there was no showing that trial counsel was deficient. See Porter v. State, 788 So.2d 917 (Fla.2001) (finding that this Court will not substitute its judgment for trial court's judgment on questions of fact, credibility of witnesses, and weight of evidence); see also Cherry v. State, 781 So.2d 1040 (Fla.2000); Whitfield v. State, 706 So.2d 1 (Fla.1997).
The trial court then considered the second prong of Strickland and held that Freeman demonstrated no prejudice. The trial court found that Dr. Larson's opinion that Freeman possessed a "mild neuropsychological impairment" was based on his speculative assessment of a combination of factors, which was subject to impeachment by the State. Furthermore, both Dr. Larson and Dr. Legum would have testified that Freeman suffered from "anti-social personality disorder" which is a trait most jurors tend to look disfavorably upon. At best, the trial court found, Dr. Larson's testimony would have established nonstatutory mitigation. See Blackwood v. State, 777 So.2d 399 (Fla.2000) (finding that trial court properly rejected statutory mental mitigator where mental health expert testified that defendant suffered from mental disturbance which was not "extreme"); see also Mahn v. State, 714 So.2d 391 (Fla. 1998); Foster v. State, 679 So.2d 747 (Fla. 1996); Johnson v. State, 660 So.2d 637 (Fla.1995). The trial court concluded that Freeman's claim failed both prongs of the Strickland test for ineffective assistance of counsel.
We accord deference to the trial court's findings of fact, and will uphold them if the facts are based on competent, substantial evidence. See Stephens v. State, 748 So.2d 1028, 1033-34 (Fla.1999). The facts the trial court relied upon are supported by competent, substantial evidence in the record. Defense counsel testified at the postconviction hearing that he provided Dr. Legum with Freeman's school records, juvenile records, background information from his files, and any other information he obtained as he acquired it. Defense counsel informed Dr. Legum that Freeman was sent to the hospital on a suicide watch prior to trial. Dr. Larson's testimony at the postconviction hearing was substantially similar to Dr. Legum's testimony at trial. Both experts testified to Freeman's IQ, intellectual capabilities, and performance on achievement tests. The fact that Freeman found a new expert to provide more favorable mental health testimony does not, in itself, render trial counsel deficient. See Gaskin v. State, 822 So.2d 1243 (Fla.2002) (holding counsel's reasonable mental health investigation was not rendered incompetent merely because defendant later secured testimony of more favorable mental health expert and where expert's opinion at evidentiary hearing was cumulative to that already presented to trial court).
The trial court's finding that Freeman's school records, juvenile records, and other information in trial counsel's files were given to the trial expert is supported by the competent, substantial evidence in the record based on trial counsel's own testimony that he provided this information. The facts in the record do not support Freeman's claim that his trial counsel was deficient in failing to provide the trial expert with pertinent background information, and relief on this claim is therefore denied.
Failure to Subpoena David Sorrells
Freeman claims that it was crucial to his defense that David Sorrells, his best *328 friend from childhood, testify live at his trial. Sorrells testified live at the Epps trial. Defense counsel did not subpoena Sorrells for trial in this case because he perceived Sorrells as a friendly witness and expected Sorrells would testify voluntarily. However, when the penalty phase trial began, defense counsel could not locate Sorrells. Counsel sent Freeman's brother to Sorrells' house and left a message with Sorrells' girlfriend. Counsel sought a continuance to find Sorrells and bring him into the courtroom to testify, telling the judge that he knew where Sorrells worked and could find him there. However, because Sorrells had not been subpoenaed, the trial judge refused to continue the penalty phase trial. The trial judge had counsel read Sorrells' testimony from the Epps trial to the jury, and instructed the jury to accept the testimony as if Sorrells had presented it live.
Sorrells testified at the evidentiary hearing. He stated that he had not been contacted to testify at the trial, but would have done so. Freeman now argues that Sorrells' testimony should have been presented live, and when considered in conjunction with the failure of trial counsel to present the other lay testimony, there was clear prejudice. He argues that without Sorrells' testimony along with the testimony of other friends and neighbors, the jury believed that only family members were willing to testify favorably about his character, and the jury never understood that he is a human being with positive characteristics.
Sorrells testified at the Epps trial about two incidents of physical abuse Freeman suffered. At the evidentiary hearing Sorrells stated that had he been called as a live witness, he would also have testified that Freeman was a hard worker, Freeman enjoyed children, and he was well-mannered. He would have also added that Freeman's stepfather was "a pretty rowdy fella."
Counsel's failure to subpoena a defense witness is not prejudicial where the testimony is presented to the jury by other evidence. See Melendez v. State, 612 So.2d 1366, 1368 (Fla.1992) (rejecting a claim of ineffectiveness of counsel for failure to subpoena defense witness because, when witness failed to appear, trial counsel was able to get testimony before jury by way of stipulation). In this case, Sorrells' testimony was presented by reading the transcript of his prior testimony.
Furthermore, as the trial court found, trial counsel's failure to subpoena Sorrells was a tactical decision to prevent the State from knowing who the defense witnesses were. Although trial counsel stated that he did not subpoena Sorrells because he thought Sorrells would voluntarily appear, he also stated that, at the time of this trial, there was no discovery regarding penalty phase witnesses and if he did not subpoena a witness, the prosecutor would not know who his witnesses would be. Trial counsel stated, "I saw no reason to assist the State in preparing to meet any of my witnesses." Thus, the trial court's finding that this was a tactical reason is supported in the record.
As this Court stated in Occhicone v. State, 768 So.2d 1037 (Fla.2000):
In order to obtain a reversal of his death sentence on the ground of ineffective assistance of counsel at the penalty phase, [the defendant] must show "both (1) that the identified acts or omissions of counsel were deficient, or outside the wide range of professionally competent assistance, and (2) that the deficient performance prejudiced the defense such that, without the errors, there is a reasonable probability that the balance of *329 aggravating and mitigating circumstances would have been different."
Id. at 1049 (quoting Rose v. State, 675 So.2d 567, 571 (Fla.1996)). The evidence Freeman now presents as evidence of mitigation would not alter the balance of the aggravating and mitigating circumstances. There were three aggravating circumstances found: (1) Freeman was previously convicted of first-degree murder, armed robbery, and burglary of a dwelling with an assault (the Epps case); (2) Freeman committed the Collier murder during the commission of a burglary of a dwelling; and (3) Freeman committed the crime for pecuniary gain. There were no statutory mitigators found. Four nonstatutory mitigators were found: (1) Freeman was of low intelligence; (2) he had been abused by his stepfather; (3) he possessed some artistic ability; and (4) he enjoyed playing with children. Every item Freeman presents as mitigation in this postconviction proceeding was considered by the jury at trial. The fact that Freeman's postconviction counsel can support the mitigation with stronger evidence would not, with reasonable probability, alter the balance of the aggravating and mitigating circumstances. The trial court properly denied relief on this claim.
Therefore, based on the foregoing, we hereby affirm the trial court's denial of postconviction relief.
It is so ordered.
ANSTEAD, C.J., WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., and SHAW, Senior Justice, concur.