[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 07-11658

———————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 31, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00668-CV-J-32

JOHN D. FREEMAN,

Petitioner-Appellant,

versus

ATTORNEY GENERAL, STATE OF FLORIDA,
SECRETARY, DEPT. OF CORRECTIONS,

Respondents-Appellees.

———————————————

Appeal from the United States District Court
for the Middle District of Florida

———————————————

**(July 31, 2008)**

Before BLACK, HULL and PRYOR, Circuit Judges.

BLACK, Circuit Judge:

In his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, Petitioner-Appellant John Freeman contends the State of Florida, through its State's Attorneys, impermissibly chose to pursue a capital sentence not because of the severity of his crimes, but because he is white and the victims of his crime were black.  Freeman argues that by doing so the State violated his rights under the Eighth and Fourteenth Amendments, and that by failing to object to the State's actions during trial and sentencing, his defense counsel violated his rights under the Sixth Amendment.

After holding an evidentiary hearing on Freeman's allegations, the state trial court made a finding of fact that the State had not considered Freeman's race or the race of his victims when it decided to pursue a capital sentence against him. Relying on that finding, which was supported by the testimony of witnesses and was not unreasonable in light of the record, the federal district court denied Freeman's petition.  The district court did not err in denying the petition; therefore, we affirm.

## I.  BACKGROUND

*A.  The Crimes*

On the morning of October 20, 1986, John Freeman climbed through a window into the home of Alvin Epps.  Once inside, Freeman stabbed Epps to

death and ransacked the house in a search for valuables, stealing various items, including a camera, clothing, and jewelry. *See Freeman v. State*, 547 So. 2d 125, 126-27 (Fla. 1989). Freeman was not immediately apprehended.

Twenty-two days later, on November 11, 1986, Freeman committed a second burglary. This time, Leonard Collier arrived home to find Freeman standing inside the front door of his home. *Freeman v. State*, 563 So. 2d 73, 75 (Fla. 1990). In an attempt to prevent Freeman from escaping, Collier pulled a gun. *Freeman v. State*, 761 So. 2d 1055, 1058 (Fla. 2000). The two men tussled over the weapon, stumbling into Collier's front yard as they did so. *Freeman*, 563 So. 2d at 75. In the course of their struggle, the gun discharged, though it did not hit either man. *Id.* Eventually, Freeman wrested the gun from Collier and hit him over the head with it approximately twelve times as Collier tried to crawl to safety. *Id.* Freeman then fled the scene. *Id.*

Meanwhile, Collier's neighbor, Harold Hopkins, had heard the gunshot and looked across the street to see a man repeatedly striking Collier on the head. *Id.* Hopkins telephoned police, who arrived shortly thereafter and obtained statements from both Collier and Hopkins. *Id.* Police located Freeman a short time later, hiding under a nearby boat dock. *Id.* Hopkins identified Freeman, and Freeman

later confessed to the burglary and to hitting Collier with the gun. *Id.* Collier died several hours later from profuse bleeding from his head wounds. *Id.*

## B. Trial Proceedings

Freeman was charged in two separate cases for the deaths of Epps and Collier. Before trial was scheduled in either case, Freeman's lawyer contacted the prosecutor in charge of the case to discuss a plea agreement in which Freeman would plead guilty to both murder charges in exchange for two consecutive life sentences with mandatory minimum 25 year terms. The state attorney's office rejected the offer and insisted on proceeding to trial on both cases, seeking a capital sentence in each.

Following a jury trial in the Collier case, Freeman was convicted of first degree felony murder. After hearing evidence of aggravating and mitigating factors, the jury recommended a capital sentence by a vote of nine to three. The trial judge imposed a sentence of death.

## C. Direct Appeal and Post-conviction Proceedings

After the Florida Supreme Court affirmed his conviction on direct appeal, *Freeman*, 563 So.2d 73, Freeman filed a petition for post-conviction review under Fla. R. Crim. P. 3.850. In his petition, Freeman contended for the first time that the State's decision to seek the death penalty was based upon impermissible racial

4

considerations in violation of his rights under the Eighth and Fourteenth Amendments, and that his trial counsel's failure to object to the State's alleged consideration of his race violated his Sixth Amendment right to the effective assistance of counsel. (*See* Rule 3.850 Motion, Dist. Ct. Dkt. #14, Exh. 60, at 130-31; *see also Freeman*, 761 So. 2d at 1060-61 n.2 (listing claims raised in Freeman's amended Rule 3.850 motion).)

In his Rule 3.850 motion, Freeman alleged:

> Mr. Freeman offered to enter guilty pleas in both [the Epps and Collier] cases . . . in exchange for a life sentence. This offer was rejected by the State, however, because the State Attorney's Office wanted to "get the numbers up" on seeking the death penalty in homicides involving white defendants and black victims.

(Rule 3.850 Motion, Dist. Ct. Dkt. #14, Exh. 60, at 129; *see also Freeman*, 761 So. 2d at 1068.) The trial court denied Freeman's motion in its entirety without conducting an evidentiary hearing on any of Freeman's claims. (*See Freeman*, 761 So. 2d at 1060.)

On appeal from the denial of the Rule 3.850 motion, the Florida Supreme Court held the trial court had erred by denying Freeman's motion without a prior evidentiary hearing. (*Id.* at 1068.) Noting it would violate the equal protection clause to consider race as a factor in seeking the death penalty (and implicitly suggesting it would therefore be deficient for counsel not to object to such a

5

consideration), the court remanded the case for further factual development at an evidentiary hearing. (*Id.*)

## 1. Evidentiary hearing

On July 16-17, 2001, the state trial court held a hearing on Freeman's Rule 3.850 motion, during which it heard testimony from Patrick McGuiness and Ann Finnell (Freeman's trial lawyers), John Bradford Stetson (the lead prosecutor on the Collier and Epps cases), and Ed Austin (the former State Attorney who supervised Freeman's cases), among others.

### a. Protocol for Capital Prosecutions

The testimony revealed that the State Attorney's Office had an established protocol for determining when to pursue the death penalty in murder cases. When a lead prosecutor identified a potential capital case, the prosecutor would present the case to a "Homicide Committee," comprised of a panel of prosecuting state attorneys. (7/16/01 Hr'g Trans. at 43:12-18.) These attorneys would review the case and, when appropriate, recommend that a capital sentence be pursued. Any time the committee recommended a case for capital prosecution, it was required to obtain Austin's personal approval before moving forward with the prosecution.

Stetson testified that he brought Freeman's case to the attention of the Homicide Committee because Freeman had committed two separate murders,

killing both individuals in their homes. (*Id.* at 19:19-24.) The Committee voted unanimously to recommend a capital sentence (*id.* at 24:22-25:15), and Austin approved the decision (*id.* at 25:15-18).

### b. Plea offer

According to the testimony of Freeman's lead counsel, Patrick McGuiness, sometime before Freeman was tried in either the Epps or Collier cases, McGuiness approached Stetson about the possibility of a plea deal, in which Freeman would plead guilty to both murders in exchange for consecutive non-capital sentences. McGuiness recalled that Stetson rejected the offer because the State needed to get "get their numbers up on whites killing blacks."[1] (*Id.* at 90:11-91:6.) McGuiness took no action regarding the conversation because he "had never encountered it before and . . . didn't really know what vehicle [he] could use to address it." (*Id.* at 91:13-15.)

Stetson did not deny rejecting Freeman's plea offer, but remembered the situation differently. Stetson testified when McGuiness proposed a plea deal, he rejected it on the ground that the aggravating factors in Freeman's case warranted

---

[1] McGuiness recounted that, at the time of the plea negotiations, the Supreme Court was considering *McCleskey v. Kemp*, 481 U.S. 279, 107 S. Ct. 1756 (1987), a case in which a black defendant was challenging the constitutionality of the death penalty on the ground that statistical studies showed blacks who killed white victims were disproportionately more likely to be sentenced to death than whites who killed black victims. *See id.* at 282-87, 107 S. Ct. at 1762-64.

a capital sentence. Additionally, unable to "resist the opportunity to throw a little bit more in there," he replied, "Not only is the answer no, but if I were to agree to this . . . [y]ou would use that decision against the State in every other death penalty case where the defendant was black, using this as an example of the case where we should have sought the death penalty but didn't because the defendant was white and killed two African Americans." (*Id.* at 17:22-24; 18:9-10, 25; 19:1-5.)

When asked whether race ever factored into his decision to seek the death penalty in any given case, Stetson testified he never pursued a capital sentence because of race. He was conscious of public perceptions of his office and made choices "in a fair and neutral manner," without giving preference to individual defendants based upon racial considerations. (*See id.* at 38:25-39:1.) Austin corroborated Stetson's testimony, stating that race had "nothing to do with the decision to file and prosecute . . . a homicide as a first degree murder case." (*Id.* at 47:24-48:1.) That decision, he testified, was made "on the basis of the law, and . . . on the basis of the facts . . . ." (*Id.* at 48:1-2.)

  2. *Post-conviction order and appeal*

Following the evidentiary hearing, the trial judge issued an order in which he found:

The testimony of [the witnesses] established that as a result of the strength of the State's case as to the Collier murder, and the likelihood of a death sentence in that case, [Defendant's lead trial counsel] McGuiness went to [Assistant State Attorney] Stetson and proposed a plea agreement as to both murder cases, whereby the defendant would plead guilty to both murders and be sentenced to consecutive life sentences with 25 year minimum mandatory terms. The testimony established an awareness by counsel for the parties of the then pending Federal litigation in which studies were used to support an allegation that prosecutors were seeking the death penalty disproportionally against black defendants. [Defense counsel] Ms. Finnell and Mr. McGuiness testified that Mr. Stetson responded to the defendant's plea offer by stating that if he accepted the offer, counsel for the defense would use that fact to support future allegations of discriminatory application of the death penalty against black defendants.

Even assuming that Mr. Stetson responded to the defendant's plea offer as Mr. McGuiness indicated, this Court finds that the response was nothing more than a somewhat ill-considered retort to then existing allegations of racial discrimination in the application of the death penalty by prosecutors (of an opposite nature to the instant facts), and that the evidence not only failed to demonstrate a racially motivated purpose in pursuing the death penalty in this case, but rather, it demonstrated that the State Attorney's Office did not pursue the death penalty in this case based on the race of this defendant (who is white).

*State v. Freeman*, No. 86-11599-CF, at 2-3 (Fla. 4th Cir. Ct. Jul. 24, 2001)

(located in record at Dist. Ct. Dkt. #14, Ex. #78). The court again denied

Freeman's motion for post-conviction relief, finding that because the State had not

based its decision to seek a capital sentence on Freeman's race, Freeman's race-based claims necessarily failed.[2]

On appeal from the denial of his post-conviction motion, Freeman continued to argue the State's alleged consideration of his race had violated his rights under the Sixth, Eighth, and Fourteenth Amendments. (*See* Appellant's Brief to Fla. Sup. Ct., Dist. Ct. Dkt. #14, Exh. 84, at 51-62.) The Florida Supreme Court affirmed the denial of Freeman's Rule 3.850 motion after concluding the evidence supported the trial court's finding that the State had not considered Freeman's race when deciding to pursue a capital sentence. *Freeman v. State*, 858 So. 2d 319, 324 (Fla. 2003).

## D. Federal Habeas Petition

On December 29, 2004, Freeman filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Florida, contending his Sixth, Eighth, and Fourteenth Amendment rights were violated by the State's alleged consideration of his race. In response, the State argued (as it had to the Florida Supreme Court) that Freeman had procedurally defaulted his Eighth and

---

[2] For reasons that are not clear, the trial court referred to Freeman's race-based allegations as a single claim arising under the Due Process Clause. (*See Freeman*, No. 86-11599-CF, at 1-2 ("The defendant raised the due process allegation that the State improperly used race as a motivating factor in deciding to pursue a death sentence in this case.")).

10

Fourteenth Amendment claims by failing to raise them on direct appeal. The district court observed that although Freeman's race-based claims had been described by the state courts as

> an equal protection claim, a due process claim, an Eighth Amendment claim and a Sixth Amendment claim, it has ultimately been addressed as a claim alleging that "race was the motive behind the prosecutor's decision to seek the death penalty in this case." *Freeman*, 858 So.2d at 322. As an extension of this claim, Petitioner has asserted that counsel was ineffective for failing to challenge this matter at trial, resulting in an equal protection violation, a due process violation and an Eighth Amendment violation.

(*Freeman v. McDonough*, No. 3:03-CV-668-J-32, at 34-35 (M.D. Fla. 2006).) Concluding the Florida Supreme Court had implicitly addressed the merits of all three of Freeman's race-based claims, the district court did the same and denied the petition, concluding the state court's finding that Freeman's sentence was not based on race was fatal to each of Freeman's claims. (*Id.* at 37-38.)

The district court later granted a certificate of appealability on "Ground II" of the petition, which consisted of Freeman's claim that the State's alleged consideration of his race violated his rights under the Sixth, Eighth and Fourteenth Amendments. (Dist. Court Order dated Jul. 9, 2007, dkt. # at 1-2; *see also* Dist. Court Order dated Oct. 23, 2006, at 2 (summarizing Freeman's habeas claims).)

11

## II.  DISCUSSION

In his habeas petition, Freeman alleges the State of Florida impermissibly considered race when deciding to pursue a capital sentence against him.  Freeman contends the State's alleged misconduct in this regard violated his Fourteenth Amendment right to equal protection and his Eighth Amendment right to be free of arbitrary and capricious punishment.  In addition, he contends his lawyer's failure to object to the State's consideration of race violated his Sixth Amendment right to effective assistance of counsel.

### A.  Claims Now Before Us

Before turning to the substance of Freeman's claims, we must determine which of those claims are properly before this court.  When a state prisoner fails to exhaust his federal claims in state court pursuant to independent and adequate state procedural rules before bringing his habeas petition, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991).  As it did in both the state and district courts, the State urges us

to conclude Freeman procedurally defaulted his Eighth and Fourteenth Amendment claims by failing to raise them on direct appeal.

Freeman first raised his race-based Eighth and Fourteenth Amendment claims in his motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850. Under Florida law, proceedings under Rule 3.850 may not be used as a second appeal, and issues that "could have been, should have been, or were raised on direct appeal" may not be raised in a later post-conviction motion, absent special circumstances not present in this case. *See Medina v. State*, 573 So. 2d 293, 295 (Fla. 1990). By not raising his Eighth and Fourteenth Amendment claims on direct appeal, Freeman procedurally defaulted those claims under state law and would ordinarily be barred from seeking federal habeas review with respect to those claims.

There are several exceptions, however, to the general rule of procedural default. When a state court ignores a procedural default and chooses to address the merits of a defendant's defaulted claims, for example, federal courts cannot apply the procedural bar on the state's behalf. *See Peoples v. Campbell*, 377 F.3d 1208, 1235 (11th Cir. 2004) (federal district court erred in invoking procedural default that state court of criminal appeals had declined to follow); *Davis v. Singletary*, 119 F.3d 1471, 1479 (11th Cir. 1997) ("It is settled that once the state

courts have ignored any procedural bar and rejected a claim on the merits—not in the alternative but as the only basis of decision—that claim is not barred from federal habeas review.").

The Florida Supreme Court's opinion affirming the denial of Freeman's motion for post-conviction relief is less than clear with respect to its treatment of Freeman's Eighth and Fourteenth Amendment claims. The court analyzed Freeman's race-based allegations as a claim of ineffective assistance of counsel and engaged in a traditional *Strickland* analysis. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). At the same time, the court never rejected Freeman's Eighth or Fourteenth Amendment claims as procedurally barred and, as the district court noted, the Florida Supreme Court summarized Freeman's claim in a way that suggested it understood he was raising both substantive Eighth and Fourteenth Amendment claims (*i.e.* "a reverse *McCleskey* claim," *Freeman*, 858 So. 2d at 323) and a separate ineffective assistance claim. Because the Florida Supreme Court's ruling can be read to reach the merits of Freeman's Eighth and Fourteenth Amendment claims, and because (as we discuss below) the state court's findings of fact definitively resolve all three of Freeman's claims on the same ground, we consider the merits of Freeman's Sixth, Eighth, and Fourteenth Amendment race-based claims.

14

*B. Merits of Freeman's Habeas Claims*

Our review of the district court's denial of Freeman's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Under AEDPA, a federal court may only grant habeas relief to a state petitioner if the state court's decision on the merits of the petitioner's claims (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Federal habeas courts presume the state court's factual findings are correct, unless the petitioner rebuts the reasonableness of those findings by clear and convincing evidence. *Id.* § 2254(e)(1).

After conducting a two-day evidentiary hearing on the allegations made in Freeman's state post-conviction motion, the state court made several key factual findings:

1. Before Freeman was tried in either the Epps or Collier murders, Freeman's defense counsel approached Stetson, the lead prosecutor, and proposed a plea agreement.

15

2. At the time of the plea discussion, the parties were aware the Supreme Court was deciding *McCleskey,* a case involving allegations that prosecutors were seeking the death penalty disproportionately against black defendants. *See* 481 U.S. at 282-87, 107 S. Ct. at 1762-64.

3. Assuming Stetson made the comments defense counsel attributed to him (that, if the plea offer was accepted, counsel for the defense would use that fact to support future allegations of discriminatory application of the death penalty against black defendants), Stetson's response was an "ill-considered retort to then existing allegations of racial discrimination in the application of the death penalty by prosecutors (of an opposite nature to the instant facts)," rather than proof of "a racially motivated purpose in pursuing the death penalty in this case." *Freeman*, No. 86-11599-CF, at 2-3 (located in the record at Dist. Ct. Dkt. #14, Ex. #78).

4. "[T]he State's Attorney's Office did not pursue the death penalty in [Freeman's] case based on the race of th[e] defendant. . . ." *Id.* at 3.

With these facts in mind, we turn to Freeman's constitutional claims. Although prosecutors are vested with wide-ranging discretion, *see Ball v. United States*, 470 U.S. 856, 859, 105 S. Ct. 1668, 1670 (1985), prosecutorial decisions remain subject to "ordinary equal protection standards." *Wayte v. United States*, 470 U.S. 598, 608, 105 S. Ct. 1524, 1531 (1985).

16

> [A]lthough prosecutorial discretion is broad, it is not unfettered.
> Selectivity in the enforcement of criminal laws is subject to
> constitutional constraints. In particular, the decision to prosecute may
> not be deliberately based upon an unjustifiable standard such as race,
> religion, or other arbitrary classification.

*Id.* (quotations, citations, and ellipsis omitted). At the time the State decided to pursue a capital sentence in Freeman's case, the law of the Supreme Court was clear: regardless the color of Freeman's skin, race could play no role in the decision to seek a capital sentence against him.

In order to prove his Fourteenth Amendment equal protection rights were violated by the State's decision to seek the death penalty, Freeman was required to prove the decisionmakers in his case "acted with discriminatory purpose" in selecting his sentence. *McCleskey*, 481 U.S. at 292, 107 S. Ct. at 1767. As we have just recounted, however, the state court made a finding of fact that the prosecutors pursued a capital sentence because of the seriousness of Freeman's crimes—not because of his race.

Freeman's Eighth Amendment claim faces a similar obstacle. A state must ensure that the discretion of its prosecutors is "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Id.* at 302, 107 S. Ct. at 1772 (quoting *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S. Ct. 2909, 2932 (1976)). If the State of Florida (acting through the State Attorney's Office) failed

17

to "establish rational criteria [narrowing] the decisionmaker's judgment as to whether the circumstances of a particular defendant's case meet the threshold" for a capital sentence, it would violate the Eighth Amendment. *Id.* at 305, 107 S. Ct. at 1774. However, Freeman does not challenge the well-organized, multi-tiered process employed by the Florida State Attorney's Office in determining whether to pursue a capital sentence in any given murder case. Instead, Freeman argues "[b]ased on the facts presented at the evidentiary hearing below, it is apparent that . . . [t]he State's selection of Mr. Freeman as a candidate for the death penalty was based upon arbitrary factors unrelated to the circumstances of the offense or the character of the defendant." Petitioner-Appellant's Brief, at 16-17. The problem with that argument, of course, is that it is completely undermined by the state court's adverse factual finding. By specifically finding the State Attorney's Office did not pursue the death penalty in Freeman's case based on his race, the state court eliminated the factual basis for Freeman's contention that his sentence was arbitrary and capricious in violation of the Eighth Amendment.

Freeman's Sixth Amendment claim rests on his Eighth and Fourteenth Amendment claims, and suffers from the same defect. To prevail on a claim of ineffective assistance, a petitioner must establish two things: his trial counsel's performance was deficient and the deficient performance prejudiced the petitioner.

*See Gordon v. United States*, 518 F.3d 1291, 1297 (11th Cir. 2008) (citing

*Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064. Freeman asserts his Sixth

Amendment right to counsel was violated when his trial lawyer failed to object to

the State's alleged consideration of race during its decisionmaking process.

The first step in the ineffectiveness analysis is to determine whether defense

counsel's performance was deficient; that is, whether counsel was unreasonable

under prevailing professional norms for failing to bring an Eighth or Fourteenth

Amendment challenge to Freeman's capital sentence. *See Stewart v. Sec'y, Dep't

of Corr.*, 476 F.3d 1193, 1209 (11th Cir. 2007). A lawyer cannot be deficient for

failing to raise a meritless claim, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th

Cir. 2001); therefore, it follows that defense counsel's failure to raise Eighth or

Fourteenth Amendment objections to Freeman's sentence could be deficient only

if there were reason for objecting to the State's exercise of its charging discretion.

As we have already established, however, the state court found the prosecutors had

*not* improperly exercised their charging discretion because they did not consider

race as a factor in deciding to pursue a capital sentence. Consequently, there was

no misconduct to which Freeman's counsel could reasonably object.

After a full evidentiary hearing, the state trial court rejected the factual

predicate underlying each of Freeman's claims by finding state prosecutors had

not based their decision to seek a capital sentence on Freeman's race. Freeman has not demonstrated by clear and convincing evidence that the findings of the state court were unreasonable in light of the evidence presented during the post-conviction evidentiary hearing, *see* 28 U.S.C. § 2254(d)(2)-(e)(1), and those findings (which are entitled to a presumption of correctness) are fatal to Freeman's constitutional claims. Because Freeman has failed to show he is in custody in violation of the Constitution or laws of the United States, the district court properly denied Freeman's petition for habeas relief.

**AFFIRMED.**