PARIENTE, J.,
dissenting.
This case is about the independence of duly elected State Attorneys to make lawful decisions within their respective jurisdictions as to sentencing and allocation of their offices’ resources, free from interference by a Governor who disagrees with their decisions. The issue before this Court is whether a duly elected State Attorney’s choice to forgo seeking one potential penalty in a class of criminal cases, in favor of seeking another penalty authorized by statute, constitutes “good and sufficient reason” for the Governor to exercise his removal power under section 27.14(1), Florida Statutes (2017). I dissent because the State Attorney’s decision to prosecute first-degree murder cases but not seek the death penalty at this time does not provide a basis for the Governor to remove State Attorney Aramis Ayala.
Article V, section 17, of the Florida Constitution, which was adopted in 1972, provides for an elected state attorney “[i]n each judicial circuit,” who “shall be the prosecuting officer of all trial courts in that circuit and shall perform other duties prescribed by general law.” Art. V, § 17, Fla. Const. As to the role of elected State Attorneys, this Court made clear in Austin v. State ex rel. Christian, 310 So.2d 289 (Fla. 1975), that “the office of State Attorney is a constitutional office,” stating:
State Attorneys are constitutional officers, charged with the responsibility of prosecutions in the circuit in which he [or she] is elected and with the performance of such other duties as are prescribed by general law. ... Being an elected official he [or she] is responsible to the electorate of [the] circuit, this being the traditional method in a democracy by which the citizenry may be assured that vast power will not be abused. ... The Legislature, in its wisdom, has empowered the Governor to exchange and assign State Attorneys between judicial circuits within the confines of its enactments.
Id. at 293-94 (emphasis added). The Court also established that “[a] statute enacted by the Legislature may not constrict a right granted under the ultimate authority of the Constitution.” Id. at 293.
Specifically at issue in this case is the decision of Aramis Ayala, the duly elected State Attorney for the Ninth Judicial Circuit, to exercise her prosecutorial discretion not to seek the death penalty in cases in which she sought and obtained indictments for first-degree murder. It is well established in our case law that “the decision to seek the death penalty,” as allowed by statute, “is within the prosecutor’s discretion.” Freeman v. State, 858 So.2d 319, 322 (Fla. 2003). Nowhere in the Florida Statutes does the Legislature mandate that a prosecutor seek the death penalty in capital prosecutions. See § 921.141(1), Fla. Stat. (2017); § 775.082(l)(a), Fla. Stat. (2017). Florida’s capital sentencing scheme affords a duly elected State Attorney the discretion to pursue either of two possible sentences “[u]pon conviction or adjudication of guilt ... of a capital felony”: “death or life imprisonment” without the possibility of parole. § 921.141(1). Section 775.082 states that “a person who has been convicted of a capital felony shall be punished by death if the proceeding held to determine sentence according to the procedure set forth in [section] 921.141 results in a determination that such person shall be punished by death, otherwise such per *761 son shall be punished by life imprisonment” and shall be ineligible for parole. § 775.082(l)(a). Either way, upon a conviction of first-degree murder, Florida law requires a minimum sentence of life imprisonment without parole.
Likewise, Florida’s most recently amended capital sentencing scheme further affirms that it is the prosecutor’s decision whether to seek death in each capital prosecution, stating: “If the prosecutor intends to seek the death penalty, the prosecutor must give notice to the defendant and file the notice with the court within 45 days after arraignment. ... The court may allow the prosecutor to amend the notice upon a showing of good cause.” Ch. 2017-1, Laws of Fla., § 4. Although the amicus brief of the House of Representatives asserts that the State Attorney is obligated to seek the death penalty in each prosecution where the State can prove at least one aggravating factor, the Governor disagrees with that position, acknowledging that the decision to seek death is a matter of prosecutorial discretion.
In his executive order removing State Attorney Ayala, Governor Scott referenced article IV, section 1(a), of the Florida Constitution, and section 27.14, Florida Statutes (2017). See, e.g„ Exec. Order No. 17-66 (Fla. Mar. 16, 2017). Article IV, section 1(a), of the Florida Constitution, states in pertinent part: “The governor shall take care that the laws be faithfully executed, commission all officers of the state and counties, and transact all necessary business with the officers of government.” Art. IV, § 1(a), Fla. Const, (emphasis added). However, as Amici Curiae Former Judges argue,[3] the fact that the Governor is charged to faithfully execute the laws does not supplant the constitutional authority of the independently elected State Attorney to prosecute crimes and to exercise his or her discretion in deciding what punishment to seek within the confines of the applicable laws. See Amici Curiae Former Judges Br. at 13 (The Governor’s constitutional duty to “ ‘take care that the laws be faithfully executed’ ... cannot empower the governor, contrary to the Florida Constitution’s express provision that state attorneys ‘shall’ be ‘the’ prosecutor within their circuits, to usurp prosecutorial duties.” (quoting art. IV, § 1(a), Fla. Const.)). Indeed, every day State Attorneys are tasked with making tough choices as to which crimes to prosecute and which penalties to pursue in consideration of their offices’ limited resources. Such decisions include whether to accept a plea to a lesser degree of the charged offense, whether to prosecute certain classes of crimes, and, of course, whether to seek the death penalty in capital prosecutions.
The Governor’s only constitutional authority to remove State Attorneys comes from article IV, section 7, of the Florida Constitution. That provision provides that “the governor may suspend from office any state officer not subject to impeachment ... for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony.” Governor Scott has not claimed that any of these grounds for exercising his constitutional removal authority applies in this case. Therefore, because Governor Scott does not have the constitutional authority to remove Ayala from her position under article IV, section 7, the Governor relies on section 27.14, Florida Statutes.[4]
*762 When State Attorney Ayala announced that her office would not seek the death penalty in capital prosecutions, she acted well within the bounds of Florida law Regarding the death penalty. She did 'not announce a refusal to prosecute the guilt of defendants charged with first-degree murder. Rather, State Attorney Ayala announced that she would not' seek a sentence that produces years of appeals and endless constitutional challenges and implicates decades of significant jurisprudential developments, many of which have emanated over the years from .the United States Supreme Court.[5] Despite assertions to the contrary, State Attorney Ayala did not make her decision based on personal opposition to the death penalty or “emotion.”
State Attorney Ayala’s decision was well within the scheme created by the. Legislature and within the scope of decisions-State Attorneys make every day on how to allocate their offices’ limited resources. Because State Attorney- Ayala’s decision was within the bounds of the law and her discretion, Governor Scott did not have “good and sufficient reason” to remove her from these cases.
■For these reasons, I would grant the petition for,a writ of quo warranto and allow State Attorney Ayala to proceed -in her constitutional role as the elected State Attorney for-the Ninth Judicial Circuit. The Governor’s decisión in this case fundamentally undermines the constitutional role of duly elected State Attorneys. Accordingly,- I dissent. •
QUINCE, J., concurs.

. Amici Curiae Former Judges, along with Current and Former Prosecutors, and Legal Community Leaders, filed a Brief in support of Ayala's petition. For ease of reference, they are referred to cumulatively here as “Amici Curiae Former Judges.”

. Section 27.14 traces its origin back to chapter 5399, Laws of Florida, § 2 (1905), in which the Legislature authorized the Governor to exchange or reassign a State Attorney in the event of the disqualification of a State Attorney, "or if for any reason the Governor *762 of the State thinks that the ends of justice would be best subserved.” In 1969, the Legislature amended the law to require this Court’s approval for exchanges dr assignments lasting longer than sixty days, and inserted the phrase "good and sufficient" to qualify the reason for acting. Ch. 69-1736, Laws of Fla.'

. In fiscal year 2015-2016, Florida courts sent 498 people to prison for homicide offenses ranging from manslaughter to first-degree murder, but only seven to death row. Fla. Dep’t of Corrections, Annual Report 2015-2016, at 37, 49, http://www.dc.state.fl. us/pub/annual/1516/FDC_AR2015-16.pdf. As to the delay that State Attorney Ayala cited in finality for the victims of violent crimes, the unfortunate statistic is that the average time between offense and execution is 17.4 years. Id. at 36; see Interview of Aramis Ayala, WFTV Channel 9 (Mar. 15, 2017), at 6.
According to DOC, there are currently 365 defendants on death row. Fla. Dep’t of Corrections, Offender Information Search, http:// www.dc.state.fl.us/OffenderSearch/ deathrowroster.aspx (July 17, 2017). Amici Curiae state that since the United States "Supreme Court approved the reinstatement of Florida's death penalty in 1976 ... less than half (only 33 of 67) of the counties [in Florida] have had executions, and 20 of Florida’s 67 counties currently have no representation among Florida's death row,’’ Amici Curiae Br. of the Am, Civil Liberties Union Found., Am, Civil Liberties Union of Fla., Florid[i]ans for Alts, to the Death Penalty, The Sentencing Project, & the NAACP Legal Def, & Educ, Fund, Inc. in Support of Pet’r Arámis Ayala, at 5. Further, "well over 40%” of the individuals currently on death row in Florida “were sentenced to death over twenty years ago,” and “ over 60 %—were sentenced to death over 15 years ago.” Id. at 13 (citing Fla. Dep’t of Corrections, Death Row Roster, http:// www.dc.state.fl.us/activeinmates/ deathrowroster.asp.) "Fifteen of the 23 death-row prisoners prosecuted in Ayala's circuit (comprising of Orange and Osceola Counties) were sentenced 15 years ago, or more.” hL