[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10955
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cv-22667-MGC

JIMMY JONES,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 24, 2012)

Before CARNES, FAY, and EDMONDSON, Circuit Judges.

PER CURIAM:

Jimmy Jones, a Florida state prisoner proceeding pro se, appeals the denial

of his 28 U.S.C. § 2254 habeas corpus petition. After a jury trial in Florida state

court, Jones was convicted on two counts of kidnapping with a weapon, one count of armed home-invasion robbery, and one count of armed robbery, and he was sentenced to life imprisonment.[1]  Jones' convictions and sentence were affirmed on direct appeal.  He sought postconviction relief in the Florida state courts but was unsuccessful.[2]  After that, Jones went to federal district court.  The district court denied his § 2254 petition but granted him a certificate of appealability on four of his ineffective assistance of counsel claims.

Three of Jones' claims are that his trial counsel was ineffective for:  (1) failing to challenge the admissibility of a shotgun into evidence; (2) advising him not to testify to support his defense of mistaken identification; and (3) failing to correctly advise him about the scope of cross-examination if he did take the stand.  Jones' fourth claim is that his counsel on direct appeal was ineffective for failing to argue that the evidence was insufficient to support his kidnapping convictions.[3]

---

[1]The state trial court determined under Florida law that because Jones was a prison release reoffender and a habitual violent felony offender, he was subject to a statutory mandatory minimum sentence of life imprisonment.

[2]Contending that his trial counsel was ineffective, Jones filed a pro se motion for postconviction relief under Fla. R. Crim. P. 3.580, which the state collateral court denied.  The Third District Court of Appeal of Florida affirmed the denial of relief.  Contending that his appellate counsel was ineffective, he also filed a pro se petition for habeas relief in the Florida Court of Appeal under Fla. R. App. P. 9.141(c), and it too was denied.

[3]Jones' appellate counsel filed an Anders brief, see In re Anders Briefs, 581 So. 2d 149 (Fla. 1991), and his convictions and sentence were affirmed in accordance with the Anders procedure.  See Towbridge v. State, 45 So. 3d 484, 487 (Fla. 1st DCA 2010) ("It is reasonable to

I.

To succeed on an ineffective assistance of counsel claim, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). When evaluating performance, we "strongly presume[]" that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." Id. at 690, 104 S.Ct. at 2066. To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Prejudice occurs only when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. A "[p]etitioner's claim must fail if either of the Strickland prongs are not met." Maharaj v. Sec'y, Dep't of Corr., 432 F.3d 1292, 1319 (11th Cir. 2005).

"[W]hen the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas

---

presume that when the court affirms an Anders appeal it has fully considered and rejected all potential issues that were apparent on the face of the record.").

3

relief was intended to be, and is, a difficult one." Johnson v. Sec'y, Dep't of Corr., 643 F.3d 907, 910 (11th Cir. 2011) (citing Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786 (2011)). "The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court." Id.; see also 28 U.S.C. § 2254(d)(1). "[O]nly if there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents may relief be granted." Johnson, 643 F.3d at 910 (quotation marks and alteration omitted). The double deference required by § 2254 and Strickland means a petitioner must show that the state courts applied Strickland in an objectively unreasonable manner. Johnson, 643 F.3d at 910–11; see also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S.Ct. at 788.

## A.

Jones contends that his trial counsel was ineffective for not objecting to the admission into evidence of a shotgun because it was recovered from a different, uncharged crime and was not relevant to the charged offenses. He asserts that,

4

shortly after the victims were robbed at gunpoint, one of them described the gun as a ".12 gauge shotgun with a wooden stock," but the gun introduced into evidence at his trial was a ".20 gauge—sawed off shotgun with no stock."

The state collateral court, in denying Jones' motion for postconviction relief, concluded that the prosecution had laid the proper foundation to introduce the shotgun into evidence, the defense had no basis under state law for objecting to its admission, and the question of whether it was the same gun that was used in the charged robbery was for the jury to decide.  The Third District Court of Appeal of Florida affirmed that decision.

When the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law."  Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (quotation marks omitted).  Because we will not "second guess" the Florida state courts' conclusion that the shotgun was admissible under state evidentiary law, Jones cannot demonstrate that his counsel was deficient for failing to object to its introduction.  See id.  A lawyer cannot be deficient for failing to raise a meritless claim.  Freeman v. Attorney Gen., 536 F.3d 1225, 1233

(11th Cir. 2008). The state courts' rejection of this claim was neither contrary to nor involved an objectively unreasonable application of Strickland.

## B.

Jones contends that his trial counsel was ineffective for advising him not to take the stand to support his mistaken identity defense. Specifically, Jones asserts that one of the victims testified that he was robbed by a man who was wearing a short-sleeved shirt, had no noticeable tattoos, and had one open-faced gold cap in the upper right side of his mouth. Jones describes himself as having "full-sleeved"[4] tattoos and "three full-faced gold crowns in the front of his mouth." Jones contends that because his counsel "incompetently" kept him from taking the witness stand, the jury did not get to see his gold teeth and tattoos.[5]

In denying Jones' motion for post-conviction relief on this ground, the state collateral court found that Jones' counsel cross-examined the victims about their identifications of Jones and specifically about tattoos and gold teeth.[6] In his

---

[4]According to Jones, this means that both of his "arms are completely tattooed from the shoulder to the hands."

[5]Jones points out that the jury could not have seen his tattoos while he sat at the defense table because he wore a long-sleeved dress shirt to trial.

[6]When one of the victims testified that the man who robbed them was wearing a short-sleeved shirt, Jones' counsel asked if he noticed any tattoos on the man's arms. The victim testified that he did not. Jones' counsel asked: "[I]f I told you this man's arms are full of tattoos, would you change your opinion as to whether this man was the person who robbed you?" The victim testified that it would not change his opinion because he noticed the robber's face and not

6

closing argument, Jones' counsel challenged the accuracy of the witnesses' identification of Jones, stating that "people have a tendency to talk together" and suggesting that the descriptions they gave to the police were unreliable.  The jury also heard testimony that soon after the robbery each of the victims separately identified Jones in a photo lineup as the person with the gun in the home-invasion robbery, and each of them identified him again in the courtroom.  The state collateral court concluded that the credibility of the witnesses' identification of Jones was for the jury to decide.

There is, at the very least, a reasonable argument that Jones' counsel was not deficient for advising Jones not to take the stand to show the jury his tattoos and his teeth.  He cannot establish that "no competent counsel" would have advised him not to take the stand, Chandler, 218 F.3d at 1315, particularly because the State would have challenged Jones' credibility on cross-examination and the jury would have learned that he had five prior felony convictions.  Nor has Jones shown that he was prejudiced by not taking the stand.  Given the evidence of his guilt that the State presented, Jones cannot show a reasonable probability of a

---

his tattoos.  Counsel also asked the witness about his statement that the robber had one open-faced gold tooth.  During closing argument, Jones' counsel again challenged the identification evidence.  He mentioned the testimony about the tattoos and the gold tooth, and argued that if Jones did have one open-faced gold tooth, the State would have presented a picture of it.

different result if he had testified.  The state collateral court did not unreasonably apply Strickland when it denied Jones' motion for post-conviction relief on this ground.  See Rutherford, 385 F.3d at 1309.

## C.

Jones' third claim overlaps with his second one.  He contends that he chose not to testify at trial based on his trial counsel's incorrect advice that, if he took the stand, the prosecutor could ask him about the nature and facts of his five prior felony convictions.  Because Jones' defense was mistaken identity, he argues that his own testimony would have been the most effective way to support it.  He reiterates that if he had taken the stand, he could have shown the jury his tattoos and three full-faced gold teeth, which would have undermined the testimony of the victim who did not notice tattoos on the robber's arms and who said that the robber had one open-faced gold tooth.

A criminal defendant has a "fundamental constitutional right to testify in his or her own behalf at trial," and that "right is personal to the defendant and cannot be waived either by the trial court or by defense counsel."  United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc).  Deficient performance may be established "where counsel has refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never

8

informed the defendant of his right to testify and that the final decision belongs to the defendant alone." Gallego v. United States, 174 F.3d 1196, 1197 (11th Cir. 1999).

The state collateral court found, based on Jones' colloquy with the trial court, that he had willingly agreed not to testify on his own behalf, that he made the decision independently, and that his lawyer had not forced him to make it.[7] The state collateral court did not address whether, in making his decision not to

_____

[7]After counsel for the State told the court that Jones had five prior felony convictions, the court conducted the following colloquy with Jones:

> THE COURT: . . . .  Do you understand that you have a right to testify if you want to?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you understand that your attorney can advise you about whether he believes it is a good idea for you to testify or not, but he can't force you not to testify?
>
> Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: The decision to testify is ultimately yours.  Obviously, you want to take into consideration his advice.  The decisions is yours.
>
> I want to know if you are making this decision of your own free will.
>
> THE DEFENDANT: Yes, I am.  Yes, ma'am.
>
> THE COURT: Has your attorney tried to pressure you or force you not to testify?
>
> THE DEFENDANT: No, ma'am.

9

testify, Jones had relied on misadvice from his trial counsel about what the prosecutor could ask him on cross-examination.

If Jones had taken the stand, Florida law would have prohibited the State from cross-examining him about the nature of his five prior felonies, unless he opened the door to that line of questioning. See Rivera v. State, 2 So. 3d 1086, 1087 (Fla. 4th DCA 2009). As long as he kept that door shut, questions on cross-examination about his prior felony convictions would have led to the identification of each of them but could not have sought details about the nature of them. See id. (concluding that "[q]uestions concerning a defendant's prior convictions are limited to whether the defendant has committed a felony . . . , and if the defendant admits such a conviction, how many of such prior convictions") (citing Fla. Stat. § 90.610(1)); see also Burst v. State, 836 So. 2d 1107, 1108 (Fla. 3d DCA 2003) (stating that it would have been improper on cross-examination for the prosecutor to have "elicit[ed] testimony regarding the nature of the convictions"); but see Rogers v. State,  964 So. 2d 221, 223 (Fla. 4th DCA 2007) (explaining a defendant opens the door by engaging in "'spin control'" that "characteriz[es] the prior convictions in a way favorable to his case at trial," and in that situation "the state is entitled to inquire further regarding the convictions to attempt to dispel any misleading impression").

10

Assuming trial counsel told Jones that if he took the stand the facts about his prior felonies would come out on cross-examination even if he did not open the door, that advice was incorrect, and Jones asserts that he relied on it in deciding not to testify. Even so, for the reasons that we have already discussed in connection with another of his ineffective assistance claims, Jones has not shown he was prejudiced by not testifying. Because of that, he has not established an ineffective assistance of counsel claim on this ground. See Strickland, 466 U.S. at 697, 104 S.Ct. at 2069; Maharaj, 432 F.3d at 1319.

## II.

Jones' final contention is that his appellate counsel rendered ineffective assistance by not challenging the sufficiency of the evidence to support his kidnapping convictions. Jones asserts that two of the victims were told to go into the garage before the robbers fled the scene, but "[n]o one was touched, harmed, bound, tied-up or further confined in any manner." He states that the confinement was for a brief time, and although the victims were locked out of the house, they "could have left the garage at any point."

The Strickland performance-and-prejudice, two-part test that we have already discussed also applies to claims of ineffective assistance of appellate counsel. Clark v. Crosby, 335 F.3d 1303, 1310 (11th Cir. 2003). "Appellate

11

counsel is not ineffective for failing to raise claims reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation marks omitted).

To determine sufficiency of the evidence under Florida law, a court considers whether, "after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt." Johnston v. State, 863 So. 2d 271, 283 (Fla. 2003). Jones was convicted of kidnapping under a provision of the Florida statute that sets forth the elements of his crime as "forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to . . . [c]ommit or facilitate commission of any felony." Fla. Stat. § 787.01(2).  To support a conviction of kidnapping that is done to facilitate the commission of another crime, the movement or confinement of the victim:

(a)    Must not be slight, inconsequential and merely incidental to the other crime;

(b)    Must not be of the kind inherent in the nature of the other crime; and

(c)    Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

12

Faison v. State, 426 So. 2d 963, 965 (Fla. 1983) (quotation marks omitted).

The jury heard testimony that, while wielding a shotgun, Jones forced two of the victims into the garage and then locked the door to the house. One of the victims testified that the armed robber took his keys, told them that he was going to take the car, and told them "not to come out of the garage." Another victim testified that the robber "forced" them to go into the garage and explained that she felt "forced" because he had a gun. She testified that she was afraid to leave the garage or to make any noise. They did not have cell phones with them in the garage and had no way to call the police. Only after they heard the robbers leave did the victims open the electric garage door and go around to the front door of the house. The door leading from the garage into the house was still locked.

The evidence established that the victims were confined to the garage in a manner that was not slight, inconsequential, or merely incidental to the armed robbery, nor was it inherent or necessarily required to commit that crime. Moreover, confining the victims in the garage made the robbery substantially easier to commit and lessened the risk of detection. Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found proof of guilt beyond a reasonable doubt that Jones had committed kidnapping under Florida law. See Faison, 426 So. 2d at 965. The District Court of Appeal of

13

Florida reasonably concluded that appellate counsel was not ineffective under Strickland for failing to challenge the sufficiency of the evidence because that challenge would have been meritless.  See Nyhuis, 211 F.3d at 1344.

**AFFIRMED.**