638 So.2d 927 (1994)
Antonio Lebaron MELTON, Appellant,
v.
STATE of Florida, Appellee.
No. 79959.
Supreme Court of Florida.
May 12, 1994.
Rehearing Denied July 5, 1994.
*928 Nancy A. Daniels, Public Defender, and W.C. McLain, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Carolyn M. Snurkowski and Mary Leontakianakos, Asst. Attys. Gen., Tallahassee, for appellee.
PER CURIAM.
Antonio Lebaron Melton appeals his convictions of first-degree murder and armed robbery and the sentences imposed, including a sentence of death. We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution.
Melton was convicted of fatally shooting George Carter during a robbery of Carter's pawn shop in Pensacola. Jurors found Melton guilty of first-degree felony murder and armed robbery. They recommended death for the murder conviction by an eight-to-four vote. The trial judge followed the jury's recommendation and sentenced Melton to death. We affirm the convictions and sentences.
The record shows that Melton and a friend, Bendleon Lewis, entered Carter's pawn shop, planning to rob it. Melton and Lewis each testified that the other planned the robbery.
Lewis was granted use immunity to testify for the State. He testified that once in the pawn shop, he feigned an interest in pawning a necklace. While Carter weighed the necklace, Lewis testified that he grabbed Carter's arm and Melton pulled a gun he was carrying in his pants. Melton held the gun on Carter *929 while Lewis gathered jewelry and guns from the shop. As Lewis tried to unlock a door so he and Melton could flee, he heard a gunshot.
Melton testified that while Lewis talked to Carter about jewelry, he put on surgical gloves and reached to pick up a ring. He testified that Carter saw him try to pick up the ring and reached for a gun he was carrying. Lewis grabbed Carter's hands, while Melton pulled his own pistol and took Carter's gun. Melton said while he held his gun on Carter, Carter rushed at him, then fell and hit his head. Melton testified that he told Carter to remain still, but Carter pushed up from the floor and grabbed for the hand with the gun. As the two struggled over the gun, the weapon discharged and hit Carter in the head. Police arrested Melton and Lewis as they were leaving the shop.
Although there was conflicting testimony about who planned the robbery and whether there was a struggle before Carter was shot, the evidence is clear that Melton held a .38-caliber gun on Carter and fired the fatal shot.
In sentencing Melton to death, the trial judge found two aggravating factors: (1) Melton was previously convicted of a violent felony (first-degree murder and robbery) and (2) Melton committed the homicide for financial gain. The trial judge found two nonstatutory mitigating factors, but assigned them little weight: (1) Melton exhibited good conduct while awaiting trial and (2) Melton had a difficult family background. The judge also sentenced Melton to life imprisonment for the robbery conviction.
Melton raised four issues on this direct appeal,[1] none of which merit relief.
First, Melton argues that he was entitled to separate guilt and penalty phase juries so he could conduct an effective voir dire about prospective jurors' opinions on imposing the death penalty if a defendant has a prior murder conviction.[2] The trial judge denied Melton's motion to empanel separate juries, and defense counsel chose not to question jurors about the possible effect of a prior murder conviction.
This Court has rejected the argument that separate juries should be empaneled for the guilt and penalty phases of all capital trials. Riley v. State, 366 So.2d 19, 21 (Fla. 1978).[3] Jurors must be able to follow the law as given by the trial judge, which includes following the judge's instructions to weigh aggravating and mitigating factors. See Fitzpatrick v. State, 437 So.2d 1072, 1076 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1328, 79 L.Ed.2d 723 (1984). Melton's prior convictions constitute an aggravating factor that the jurors were instructed to weigh. The record before us shows that the jurors empaneled in Melton's case said during voir dire that they could follow the law. Melton is not entitled to relief on this issue.
Second, Melton claims the trial court erred in not declaring a mistrial after the prosecutor made several improper comments to the jury.
Melton argues that the State made an improper comment on his right to remain silent when it asked the attorney who prosecuted him for the prior murder and robbery this question:
[W]as there any evidence received whatsoever that anyone other than Antonio Lebaron *930 Melton, the defendant in this case, was the triggerman [in the prior case]?
Melton, acting on counsel's advice, did not testify in the earlier trial. The judge in the instant case overruled defense counsel's objection. While a prosecutor cannot make any comment before a jury that is fairly susceptible of being interpreted as a comment on a defendant's right to remain silent, the prosecutor's question concerns a case for which Melton had already been convicted. Melton does not argue that any comment in the instant case could be construed as commenting on his right to remain silent. Even if the inquiry about the previous case is relevant, it is not a comment on Melton's right to remain silent. A prosecutor can review the evidence as a whole and point out that it is uncontradicted. See, e.g., White v. State, 377 So.2d 1149, 1150 (Fla. 1979). The question concerns the evidence as a whole in the prior case and not Melton's failure to testify.
Melton also objected to a prosecutor's comment that he claimed extracted a commitment from the jury to recommend a death sentence. We do not interpret the comment in that way. Instead, during his closing argument in the penalty phase, the prosecutor asked jurors to recall the answers they gave to questions during voir dire. The record shows that the prosecutor did not seek a commitment during voir dire.
In addition, Melton asked for a mistrial when the prosecutor told jurors during the penalty phase that they should not consider disparate treatment of codefendants in their sentencing recommendation.[4] The trial judge denied the motion for a mistrial, but told jurors they could consider a codefendant's sentence. Later, when the judge instructed the jury in the penalty phase, he pointed out that jurors could consider in mitigation "any other aspect of the defendant's character or record and any other circumstances of the offense." None of the prosecutor's comments merit relief.
Third, Melton argues that the trial court erred in instructing the jury on and later finding the aggravating circumstance that the homicide was committed for pecuniary gain. In sentencing Melton, the trial judge found the evidence supported the aggravating factors that (1) the murder occurred in an attempt to complete the crime of robbery and to steal the victim's property of substantial value and (2) the felony murder was committed while the defendant was engaged in the commission of a robbery. He noted that the facts supporting these two circumstances are the same and cannot be used to find two aggravating circumstances. The judge chose to find that the evidence established beyond a reasonable doubt that the felony murder was committed for financial gain. The record supports this finding.[5] This Court has held that finding pecuniary gain in aggravation is not error when felonies including robbery have occurred. Bates v. State, 465 So.2d 490, 492 (Fla. 1985). Thus, we deny relief on this issue.
Finally, Melton argues that his death sentence is disproportionate. This Court upheld the death penalty in the factually similar case of Freeman v. State, 563 So.2d 73, 76-77 (Fla. 1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991). In Freeman the defendant killed the victim during a burglary. As in the instant case, the trial court found two statutory aggravating factors: (1) the murder was committed for pecuniary gain and (2) the defendant had been convicted of a prior murder. Id. at 77. There were no statutory mitigating factors and the nonstatutory mitigators were not compelling. Id. In finding that the death sentence was not disproportionate, the Court noted that the trial judge had weighed the aggravating and mitigating factors and "[i]t is not this Court's function to reweigh these circumstances." Id. The record is clear in the instant case that the trial judge weighed the aggravating and mitigating factors in this case, and we will not reweigh these circumstances. *931 Melton's death sentence is not disproportionate to other cases.
Accordingly, we affirm Melton's convictions and sentences.
It is so ordered.
GRIMES, C.J., and OVERTON, McDONALD, SHAW, KOGAN and HARDING, JJ., concur.
NOTES
[1] (1) Whether the trial court erred in not empaneling separate guilt and penalty phase juries; (2) whether the trial court erred in not declaring a mistrial after the prosecutor made several improper comments to the jury; (3) whether the trial court erred in instructing the jury on and later finding the aggravating circumstance that the homicide was committed for pecuniary gain; and (4) whether the death sentence is disproportionate in this case.
[2] When Melton was tried for Carter's killing, he had already been convicted of an unrelated armed robbery and murder. These prior convictions were not relevant to the guilt phase of the instant case, but were part of the penalty phase.
[3] In addition, section 921.141(1), Florida Statutes (1991), does not provide for separate juries in a case such as Melton's. The relevant part of the statute says:

If, through impossibility or inability, the trial jury is unable to reconvene for a hearing on the issue of penalty, having determined the guilt of the accused, the trial judge may summon a special juror or jurors as provided in chapter 913 to determine the issue of the imposition of the penalty.
[4] Lewis had not been sentenced when Melton was tried, but he was expected to receive a lesser sentence in exchange for his testimony.
[5] Testimony supporting this finding includes Melton's testimony that he carried a gun when he went to the pawn shop to steal some rings and he held a gun on Carter while Lewis gathered up proceeds from the robbery. After Melton shot Carter, he did not throw down the gun, but put the gun back into his waistband.