[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12967
_____

D.C. Docket No. 1:08-cv-00034-RS

ANTONIO LEBARON MELTON,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from United States District Court
for the Northern District of Florida
_____

(March 3, 2015)

Before HULL, WILLIAM PRYOR, and MARTIN, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

Antonio Melton moves to amend his motion to reconsider his application for

a certificate of appealability to include two new issues: (1) whether the Supreme

Court of Florida unreasonably applied clearly established federal law when it

decided that Melton's prior conviction as a juvenile could be used as an aggravating factor in his capital trial; and (2) whether the Supreme Court of Florida unreasonably applied clearly established federal law when it denied Melton relief without considering his "mental and emotional age." Because neither issue is debatable, we deny Melton's motion.

## I. BACKGROUND

A Florida jury convicted Melton of armed robbery and first-degree felony murder for shooting George Carter during a robbery of Carter's pawn shop. *Melton v. State*, 949 So. 2d 994, 1000 (Fla. 2006). The jury recommended a sentence of death, and the trial judge imposed that sentence. *Id*. Melton was 18 years, 25 days old when he committed the crime. The trial judge found as an aggravating factor that Melton was previously convicted of first-degree felony murder. *Id*. Melton committed that murder when he was 17 years old.

Melton sought postconviction relief from the Supreme Court of Florida, which denied Melton relief. *Id*. at 1015–16, 1021. Melton then filed a federal petition for a writ of habeas corpus, 28 U.S.C. § 2254. He argued that, under *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183 (2005), the state courts violated his rights under the Eighth Amendment when they relied on a juvenile conviction as an aggravating factor in a capital case and when they failed to consider his "mental

2

and emotional age." The district court denied the petition and refused to grant a certificate of appealability. Melton moved our Court to grant him a certificate of appealability, and we denied his motion. Melton moved that we reconsider his request for a certificate of appealability to include as new issues his arguments based on *Roper*.

## II. STANDARD OF REVIEW

A petitioner seeking a certificate of appealability must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). A petitioner seeking a certificate "must prove something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El v. Cockrell*, 537 U.S. 322, 338, 123 S. Ct. 1029, 1040 (2003) (internal quotation marks and citation omitted). "We look to the District Court's application of [the Antiterrorism and Effective Death Penalty Act] to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason." *Id*. at 336, 123 S. Ct. at 1039.

3

### III. DISCUSSION

In his motion to amend, Melton asks us to grant a certificate of appealability on two new issues, each based on *Roper v. Simmons*, where the Supreme Court of the United States held that a state cannot execute a convict who committed his capital crime before he turned 18 years of age. 543 U.S. at 578, 125 S. Ct. at 1200. First, Melton argues that the Supreme Court of Florida erred because it refused to grant him a new trial even though the trial court found an aggravating factor that was based on a conviction for murder that Melton committed when he was 17 years old.  Second, Melton argues that, although he was 18 years old when he committed the capital offense, his "mental and emotional age" was younger, and he should not be subject to the death penalty for committing a crime with a "mental and emotional age" below 18 years old. Melton fails to satisfy the requirements for a certificate of appealability.

When we review a request for a certificate of appealability, we ask whether, in the light of the deference granted to state courts by the Antiterrorism and Effective Death Penalty Act, "'reasonable jurists would find the district court's assessment of the constitutional claims debatable.'" *Cockrell*, 537 U.S. at 338, 123 S. Ct. at 1040 (quoting *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604). Because Melton argues that the Supreme Court of Florida failed to apply *Roper*, he must establish

4

that it is debatable whether the Supreme Court of Florida unreasonably applied clearly established federal law, 28 U.S.C. § 2254(d)(1). And the Supreme Court of Florida unreasonably applied clearly established federal law only if there "is no possibility fairminded jurists could disagree that the state court's decision conflicts with" precedents of the Supreme Court of the United States. *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 786 (2011).

Melton must establish that reasonable jurists could debate whether no fairminded jurist could come to the conclusions of the Supreme Court of Florida. Melton cannot satisfy that burden under either of his legal theories. We discuss each in turn.

First, Melton fails to establish that there is a debatable question about whether the Supreme Court of Florida unreasonably applied clearly established federal law when it decided that "nowhere did the Supreme Court [of the United States] extend [*Roper*] to prohibit the use of prior felonies committed [as a minor] . . . as an aggravating circumstance during the penalty phase." *Melton*, 949 So. 2d at 1020. *Roper* prohibits only the imposition of the death penalty on a defendant who committed the capital crime when he was younger than 18 years old. 543 U.S. at 578, 125 S. Ct. at 1200. The Court in *Roper* did not consider the use of prior convictions as aggravating factors. Nor has Melton pointed to any other Supreme

5

Court precedent that even suggests that a prior conviction from youth may not form the basis for an aggravating factor in a capital case. Because "clearly established Federal law" consists of only Supreme Court precedent, 28 U.S.C. § 2254(d)(1), it is not debatable whether the Supreme Court of Florida violated any such law.

Second, Melton fails to establish a debatable question about whether the Supreme Court of Florida violated clearly established federal law when it did not consider Melton's "mental and emotional age" in the light of *Roper*. Melton argues that several of the factors considered relevant in *Roper*—for instance, a lack of maturity and susceptibility to peer pressure—were present here. Even though Melton was over the age of 18 at the time he committed his capital offense, he argues that his sentence was invalid because some of the factors of youth were still present when he committed the crime. But the Supreme Court of the United States recognized that "[d]rawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules," as the "qualities that distinguish juveniles from adults do not disappear when an individual turns 18," and nevertheless held that "a line must be drawn." *Roper*, 543 U.S. at 574, 125 S. Ct. at 1197–98. Whatever one thinks of the abstract legal question about "mental and emotional age," we cannot say that it is debatable whether the Supreme Court of

6

Florida unreasonably applied clearly established federal law. The Supreme Court of the United States has not decided the issue, and dicta from the most relevant decision suggest that the Supreme Court of Florida was correct in its resolution of the issue. It is not "debatable amongst jurists of reason," *Cockrell*, 537 U.S. at 336, 123 S. Ct. at 1039, whether the Supreme Court of Florida "unreasonabl[y] appli[ed] . . . clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d).

## IV. CONCLUSION

Melton's motion for reconsideration is **DENIED**.

7

MARTIN, Circuit Judge., dissenting:

I would grant Mr. Melton a certificate of appealability on his claim that the Eighth Amendment precludes the state from using his prior violent felony conviction, committed before his eighteenth birthday, to obtain a death sentence in his case. See Roper v. Simmons, 543 U.S. 551, 125 S. Ct. 1183 (2005) Likewise, I think Mr. Melton's claim—that his mental and emotional age of less than eighteen prohibits his execution—satisfies the certificate of appealability standard.

My research reveals no Eleventh Circuit precedent addressing Mr. Melton's Simmons claims in the context of a capital case. Because the Simmons issues are one of first impression, debatable, and likely to come up in other cases, I believe they warrant a certificate of appealability. "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Miller-El v. Cockrell, 537 U.S. 322, 338, 123 S. Ct. 1029, 1040 (2003). The Simmons issues meet this low standard.

## I.    BACKGROUND

Mr. Melton was convicted of armed robbery and first-degree felony murder and sentenced to death for shooting George Carter during a robbery of Mr. Carter's pawn shop. Melton v. State, 638 So. 2d 927, 928 (Fla. 1994) (per curiam) (Melton

8

I). The jurors recommended death by an eight-to-four vote. Id. In sentencing Mr. Melton to death, the trial court found two aggravating circumstances: "(1) Melton was previously convicted of a violent felony . . . and (2) Melton committed the homicide for financial gain." Id. at 929. Mr. Melton's prior violent felony was his conviction for armed robbery and first-degree felony murder of Ricky Saylor in an unrelated offense. See id. at 929 n.2; Melton v. State, 949 So. 2d 994, 1000 (Fla. 2006) (per curiam) (Melton II). Mr. Melton was eighteen years and twenty-five days old when he committed the Carter murder, and seventeen years old at the time of the Saylor crime.

In Melton II, the Florida Supreme Court considered and rejected Mr. Melton's claim that Simmons "stands for the proposition that the Eighth Amendment precludes reliance upon criminal acts committed before the age of eighteen from serving as a basis for the imposition of the death penalty." 949 So. 2d at 1020.

Mr. Melton then raised his Simmons claims in Ground VIII of his federal petition, making two distinct arguments. First, he argued the state's use of his prior juvenile conviction as an aggravator violated the Eighth Amendment. Second, Mr. Melton asserted that he "suffered from a mental and emotional age of less than eighteen years [at the time of the Carter offense], which renders the

9

application of the death penalty in his case cruel and unusual." The District Court denied Mr. Melton's Simmons claims on the merits, concluding that he "failed to demonstrate that in rejecting this claim the state court relied on erroneous facts, or applied law contrary to that established by the United States Supreme Court or in an objectively unreasonable manner in light of such precedent." The District Court also denied Mr. Melton's other habeas claims and denied him a COA.

After his initial application for COA with this Court was denied, Mr. Melton filed a motion for reconsideration of the denial of COA, and a motion to amend request for COA that requested a COA on the Simmons issues.

## II.    DISCUSSION

Our Court may issue a COA from the denial of a § 2254 petition "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Mr. Melton must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603–04 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n.4, 103 S. Ct. 3383, 3394 & n.4 (1983)). Applying this standard, I believe reasonable jurists could debate the District Court's resolution of Mr. Melton's

10

Simmons claims, or at a minimum, that his claims are adequate to deserve encouragement to proceed further.

In Simmons, the Supreme Court considered "whether it is permissible under the Eighth and Fourteenth Amendments . . . to execute a juvenile offender who was older than 15 but younger than 18 when he committed a capital crime."  543 U.S. at 555–56, 125 S. Ct. at 1187.  Mr. Simmons committed murder when he was seventeen and was tried and sentenced to death when he was eighteen.  Id. at 556, 125 S. Ct. at 1187.  During the penalty-phase closing arguments in Simmons, the jury was instructed that it could consider Mr. Simmons's age as a mitigating factor. Id. at 558, 125 S. Ct. at 1188.  The trial judge imposed the death penalty after the jury recommended it.  Id. at 558, 125 S. Ct. at 1189.  In his state postconviction proceedings, Mr. Simmons—like Mr. Melton[1]—presented evidence that he "was 'very immature,' 'very impulsive,' and 'very susceptible to being manipulated or influenced,'" to support an ineffective-assistance-of-counsel claim.  Id. at 558–59, 125 S. Ct. at 1189.  Both state and federal courts denied postconviction relief.  Id. at 559, 125 S. Ct. at 1189.

---

[1] During Mr. Melton's state postconviction hearing, Dr. Henry Dee testified that Mr. Melton was a "strikingly immature boy for 18," "had almost no social contact" when he entered high school, and "could be easily manipulated."

11

"After [Mr. Simmons's first round of collateral proceedings] had run [its] course, th[e Supreme] Court held that the Eighth and Fourteenth Amendments prohibit the execution of [the intellectually disabled.]" Id. (citing Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242 (2002)). Mr. Simmons then "filed a new [state postconviction petition], arguing that the reasoning of Atkins established that the Constitution prohibits the execution of a juvenile who was under 18 when the crime was committed." Id. "The Missouri Supreme Court agreed," set aside Mr. Simmons's death sentence, and resentenced him to life imprisonment. Id. at 559–60, 125 S. Ct. at 1189. The United States Supreme Court affirmed, holding that "[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." Id. at 578–79, 125 S. Ct. at 1200.

In its opinion, the Supreme Court also acknowledged "sufficient evidence that today our society views juveniles, in the words Atkins used respecting the [intellectually disabled], as 'categorically less culpable than the average criminal.'" Id. at 567, 125 S. Ct. at 1194 (quoting Atkins, 536 U.S. at 316, 122 S. Ct. at 2249). The Supreme Court identified three characteristics of juveniles younger than eighteen to explain why "juvenile offenders cannot with reliability be classified among the worst offenders." Id. at 569, 125 S. Ct. at 1195. "First, as any parent

12

knows and as the scientific and sociological studies . . . tend to confirm, a lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young.  These qualities often result in impetuous and ill-considered actions and decisions."  Id. (alteration adopted) (quotation marks omitted).  Second, "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure."  Id.  Third, "the character of a juvenile is not as well formed as that of an adult."  Id. at 570, 125 S. Ct. at 1195.  Based on these three broad distinctions between juveniles and adults, the Supreme Court declared:

> The differences between juvenile and adult offenders are too marked and well understood to risk allowing a youthful person to receive the death penalty despite insufficient culpability. An unacceptable likelihood exists that the brutality or cold-blooded nature of any particular crime would overpower mitigating arguments based on youth as a matter of course, even where the juvenile offender's objective immaturity, vulnerability, and lack of true depravity should require a sentence less severe than death.  In some cases a defendant's youth may even be counted against him.  In this very case, as we noted above, the prosecutor argued Simmons' youth was aggravating rather than mitigating. While this sort of overreaching could be corrected by a particular rule to ensure that the mitigating force of youth is not overlooked, that would not address our larger concerns.

Id. at 572 –73, 125 S. Ct. at 1197 (citation omitted).

Although Mr. Melton was convicted and sentenced to death for a murder he committed when he was eighteen years and twenty-five days old, the state's

13

reliance on the murder he committed while a juvenile was arguably the weightiest reason he was sentenced to death. See Silvia v. State, 60 So. 3d 959, 974 (Fla. 2011) ("[T]he prior violent felony aggravator is considered one of the weightiest aggravators."); cf. Wong v. Belmontes, 558 U.S. 15, 26, 130 S. Ct. 383, 390 (2009) (recognizing that a capital petitioner's participation in a prior murder is "the worst kind" of aggravating evidence). Mr. Melton's sentencer relied on his prior juvenile offense to impose a death sentence, and the Florida Supreme Court relied on it to conclude that death was a proportional sentence. Melton I, 638 So. 2d at 929–31. Indeed, Mr. Melton's trial judge said he gave "great weight to this aggravating circumstance" in sentencing him to death. Doc. 1 at 4–5 (quoting Sentencing Order). By comparison, the Florida Supreme Court has held that the pecuniary-gain aggravating factor, Mr. Melton's only other aggravating circumstance, is not sufficient by itself to support a death sentence. See, e.g., Williams v. State, 707 So. 2d 683, 684, 686 (Fla. 1998); Sinclair v. State, 657 So. 2d 1138, 1140 n.1, 1142–43 (Fla. 1995) (holding pecuniary gain aggravating factor, even when combined and merged with murder-during-robbery aggravating factor, was insufficient to support death sentence where defendant had some mitigation).

I believe reasonable jurists could debate whether the reasoning of Simmons should apply (1) to juvenile convictions used as aggravation or (2) to a defendant's

14

"mental age." On the one hand, Simmons did not directly consider either of these issues. Simmons adopted a categorical cutoff of eighteen as "the age at which the line for death eligibility ought to rest," while acknowledging that drawing such a line "is subject . . . to the objections always raised against categorical rules." 543 U.S. at 574, 125 S. Ct. at 1197–98. I recognize, viewing the holding of Simmons narrowly—that the Eighth and Fourteenth Amendments prohibit the execution of only those who committed crimes as a juvenile—the state has a good argument that the state court's rejection of Mr. Melton's Simmons argument was not an unreasonable application of clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d)(1).

On the other hand, Simmons reaffirmed the idea that "[c]apital punishment must be limited to those offenders . . . whose extreme culpability makes them the most deserving of execution." 543 U.S. at 568, 125 S. Ct. at 1194 (quotation marks omitted). Mr. Melton could reasonably argue that he lacks extreme culpability because (1) his weightiest aggravating factor was a juvenile conviction and (2) his mental and emotional age was less than eighteen.

Further, "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied." Panetti v. Quarterman, 551 U.S. 930, 953, 127 S. Ct. 2842, 2858 (2007) (quotation marks

15

omitted).  "Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced."  Id. (quotation marks omitted). Indeed, Simmons affirmed the Missouri Supreme Court's extension of the reasoning of Atkins—which had relied on the diminished culpability of the intellectually disabled to bar their execution—to preclude the execution of juvenile offenders.  Simmons, 543 U.S. at 559–60, 125 S. Ct. at 1989–90.

I am also mindful that Simmons recognized that "[t]here are a number of crimes that beyond question are severe in absolute terms, yet the death penalty may not be imposed for their commission."  Id. at 568, 125 S. Ct. at 1194–95 (citing Coker v. Georgia, 433 U.S. 584, 97 S. Ct. 2861 (1977) (rape of an adult woman) and Enmund v. Florida, 458 U.S. 782, 102 S. Ct. 3368 (1982) (felony murder where defendant did not kill, attempt to kill, or intend to kill)).  Nor may the death penalty be "imposed on certain classes of offenders, such as . . . the insane, and the [intellectually disabled], no matter how heinous the crime."  Id. at 568, 125 S. Ct. at 1195.  That is because "the death penalty is reserved for a narrow category of crimes and offenders."  Id. at 569, 125 S. Ct. at 1195.

Here, Mr. Melton argues that at the time of his capital offense, he "suffered from a mental and emotional age of less than eighteen years, which renders the

16

application of the death penalty in his case cruel and unusual." Several of the factors cited in Simmons, which the Supreme Court relied on to differentiate between juvenile and adult offenders (such as lack of maturity, susceptibility to peer pressure and negative influences) are present in Mr. Melton's case. Id. at 5–6 & n.3; see also Simmons, 543 U.S. at 569–70, 125 S. Ct. at 1195–96 (discussing three broad differences between juveniles and adults). Mr. Melton points to evidence presented at his postconviction hearing which demonstrates that he "is a follower, not a leader"; that his "chronological age, at the time of the crime was far greater than his mental and emotional maturity"; and that his "immaturity resulted in Melton being easily manipulated and susceptible to the influences of his more experienced peers." Despite being twenty-five days past the chronological cut off, Mr. Melton argues he still possessed the kinds of characteristics attributed to youthful offenders that the Supreme Court identified as justifying Eighth Amendment protection. Thus, it is at least debatable that "[t]he mere fact of a defendant's chronological age should not qualify a defendant for death where the measures of capacity render him lacking in culpability." Henyard v. McDonough, 459 F.3d 1217, 1248–49 (11th Cir. 2006) (Barkett, J., concurring) (per curiam).

It is also at least debatable whether a defendant should be sentenced to death based on his juvenile record. Simmons tells us, as a categorical matter, that

17

offenses committed by a juvenile are "not as morally reprehensible as that of an adult." 543 U.S. at 570, 125 S. Ct. at 1195 (quotation omitted).

Although the Majority does not see these legal issues as debatable, they are sufficient to justify issuance of a certificate of appealability for three other reasons. First, they are issues of first impression in this Circuit. While this Court has considered and rejected arguments that Simmons prohibits consideration of juvenile convictions in the non-capital sentencing context,[2] I have found no Eleventh Circuit capital cases resolving the Eighth Amendment claims raised by Mr. Melton. I would not rely on our non-capital cases to resolve the unique issues presented by Mr. Melton's capital case. In reviewing Eighth Amendment claims in the capital-sentencing context, the Supreme Court has "imposed protections that the Constitution nowhere else provides" because "death is different." Harmelin v. Michigan, 501 U.S. 957, 994, 111 S. Ct. 2680, 2701 (1991); see also Simmons, 543 U.S. at 568, 125 S. Ct. at 1194 ("Because the death penalty is the most severe punishment, the Eighth Amendment applies to it with special force."); Hoffman,

_____

[2] See, e.g., United States v. Hoffman, 710 F.3d 1228, 1231–32 (11th Cir. 2013) (per curiam) (finding, under plain-error review, that a mandatory-life-sentence enhancement under 21 U.S.C. § 841 predicated on juvenile convictions did not violate the Eighth Amendment and Simmons); United States v. Wilks, 464 F.3d 1240, 1243 (11th Cir. 2006) (holding that Simmons does not preclude use of juvenile convictions as predicate convictions for sentences under the Armed Career Criminal Act, 18 U.S.C. § 924(e)).

18

710 F.3d at 1232 (rejecting <u>Simmons</u> challenge in the non-capital sentencing context in part because <u>Simmons</u> "concerned imposition of the death penalty").

The closest we have come to confronting this issue in the context of a capital case was <u>Henyard</u>. There we noted the capital petitioner had an "alleged mental and emotional age of thirteen," although the defendant did not raise the issue in the district court or on appeal. 459 F.3d at 1244 n.15. But one panel member concurred separately to "address the separate and troubling issue of Henyard's mental age." <u>Id.</u> at 1247 (Barkett, J., concurring). After reviewing the reasoning of <u>Simmons</u>, Judge Barkett concluded two things: (1) "the mere fact of a defendant's chronological age should not qualify a defendant for death where the measures of capacity render him lacking in culpability"; and (2) "[a]lthough it may not be directly before us, at some juncture this issue must be addressed." <u>Id.</u> at 1248–49. I say the time has come.

Second, I believe the <u>Simmons</u> issues presented by Mr. Melton's case are likely to come up in pending and future capital habeas cases. Surely Mr. Melton is not the only capital defendant sentenced to death based on aggravating circumstances predicated on juvenile convictions. Neither is he likely to be the only capital petitioner to claim that his mental age of less than eighteen precludes his execution. Indeed, I am aware of at least one other case where a capital habeas

petitioner raised the mental-age Simmons issue before this Court.  See Initial Brief of Petitioner-Appellant at 57–60, Barwick v. Sec'y, Fla. Dep't of Corr., No. 14-11711 (11th Cir. Aug. 4, 2014).  The Florida Supreme Court found the petitioner had procedurally defaulted the claim, see Barwick v. State, 88 So. 3d 85, 106 (Fla. 2011), so the Barwick panel may not reach its merits.  But the fact that one panel of this Court has already issued a COA on that Simmons issue demonstrates it is debatable.

Third, Mr. Melton's case is a good opportunity to address these issues.  The Simmons issues were fairly presented in state court and the Florida Supreme Court decided them on the merits.  See Melton II, 949 So. 2d at 1020.  There are no procedural obstacles in the way of our establishing circuit precedent.

For all of these reasons, I would grant Mr. Melton a limited certificate of appealability on his Simmons claims so that he can have full appellate review and we can decide these important issue of first impression in this Circuit.  After fuller development of these issues, I might agree that Mr. Melton cannot prevail on his Simmons claims in light of the deference we must give the state court's adjudication and Supreme Court precedent.   But at this stage, I believe he has met the standard for a certificate of appealability.