# Supreme Court of Florida

_____

No. SC15-406
_____

**ANTONIO LEBARON MELTON,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[May 26, 2016]

PER CURIAM.

Antonio Lebaron Melton, a prisoner under the sentence of death, appeals the circuit court's order denying his successive motion for postconviction relief filed under Florida Rules of Criminal Procedure 3.850 and 3.851. Because the order concerns postconviction relief from a sentence of death, we have jurisdiction. See art. V, § 3(b)(1), Fla. Const. In 1992, Melton was convicted in Escambia County of the January 1991 felony murder of George Carter and the armed robbery of Carter's pawn shop. Melton's convictions and sentences were affirmed on direct appeal in Melton v. State, 638 So. 2d 927 (Fla.), cert. denied, 513 U.S. 971 (1994).

The denial of relief in Melton's initial postconviction appeal was affirmed in Melton v. State, 949 So. 2d 994 (Fla. 2006).

In this successive postconviction proceeding, Melton argues that he is entitled to relief based on the following: (1) newly discovered evidence that Melton and victim Carter struggled with the gun before Carter was shot and that codefendant Bendleon Lewis secured a plea agreement with the State before testifying at Melton's trial; and (2) the State's alleged failure to disclose that it negotiated a plea agreement with codefendant Lewis prior to Lewis's testimony at Melton's trial (Brady/Giglio claims). According to Melton, Lewis stated in a 2013 discussion with defense investigators Daniel Ashton and David Mack that there was a struggle between Melton and Carter prior to the firing of the fatal shot, and that he (Lewis) secured a plea agreement with the State before testifying at Melton's trial. Lewis, who testified at the evidentiary hearing in 2014, disputed the investigators' accounts. As we explain below, we affirm the circuit court's denial of relief.

## I. Newly Discovered Evidence

Melton argues that Lewis's statements—as testified to by the investigators—that he saw a struggle between Melton and Carter before Carter was shot, and that he had a plea agreement in place at the time of trial, constitute newly discovered evidence warranting a new trial. He maintains that the circuit court erred in

denying relief, and that the court failed to properly evaluate the cumulative effect

of this evidence.[1]  This Court has set forth a two-prong test for evaluating claims of

newly discovered evidence:

> To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements.  First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence.  Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.  See Jones v. State, 709 So. 2d 512, 521 (Fla. 1998) (Jones II).  Newly discovered evidence satisfies the second prong of the Jones II test if it "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability."  Jones II, 709 So. 2d at 526 (quoting Jones v. State, 678 So. 2d 309, 315 (Fla. 1996)).  If the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence would probably yield a less severe sentence.  See Jones v. State, 591 So. 2d 911, 915 (Fla. 1991) (Jones I).

Marek v. State, 14 So. 3d 985, 990 (Fla. 2009).  In determining the impact of the

newly discovered evidence, when a prior evidentiary hearing has been conducted,

"the trial court is required to 'consider all newly discovered evidence which would

be admissible' at trial and then evaluate the 'weight of both the newly discovered

---

1. The parties dispute whether Melton's newly discovered evidence claim is properly evaluated as an alleged recantation of Lewis's trial testimony or as a traditional claim of newly discovered evidence.  Regardless of whether Melton's statements to the investigators are treated as an alleged recantation or they are evaluated under the newly discovered evidence standard set forth in Jones II, Melton is not entitled to relief.  Our analysis proceeds under the newly discovered evidence standard set forth in Jones II.

evidence and the evidence which was introduced at the trial.' " Jones II, 709 So.

2d at 521. "[A] postconviction court must even consider testimony that was

previously excluded as procedurally barred or presented in another postconviction

proceeding in determining if there is a probability of an acquittal." Hildwin v.

State, 141 So. 3d 1178, 1184 (Fla. 2014). This Court must conduct a cumulative

analysis of all the evidence so that there is a "total picture" of the case and "all the

circumstances of the case." Lightbourne v. State, 742 So. 2d 238, 247 (Fla. 1999)

(quoting Armstrong v. State, 642 So. 2d 730, 735 (Fla. 1994)).

The circuit court evaluated Melton's newly discovered evidence claim as

follows:

> The Court finds that Lewis' testimony at the evidentiary
> hearing was credible and accepts his testimony regarding his
> encounter with Ashton and Mack. . . . Defendant argues that the
> hearsay statements from Ashton and Mack regarding what Lewis
> allegedly told them about a struggle should also be considered new
> and material evidence. Even if the statements were somehow
> admissible at a new trial, the Court finds that their testimony about
> what Lewis said would not have resulted in a different verdict.

Further, in light of the prior violent felony and pecuniary gain aggravators, the

circuit court concluded "that the testimony of Ashton and Mack would not have

resulted in a lesser sentence." The court also concluded that "even when the claim

is considered in light of all of the evidence presented at trial as well as post-trial

evidence, Defendant cannot show that the outcome of his trial or sentencing

hearing would somehow have been different.  Lightbourne v. State, 742 So. 2d 238 (Fla. 1999)."

Having considered Melton's newly discovered evidence and the evidence that could be introduced at a new trial, including the evidence introduced in Melton's prior postconviction proceedings, we agree with the circuit court's conclusions that there is no probability of an acquittal on retrial.  Lewis's credibility was an issue at Melton's trial in 1992.  The jury was aware that Lewis was involved in negotiations with the State and that he had been granted immunity.  Lewis testified that he hoped to receive consideration during sentencing for his testimony against Melton.  Therefore, the jury was presented with evidence of Lewis's possible bias.  Even considering the new evidence offered during the course of this postconviction proceeding, it is improbable that the verdict would be different on retrial.  Melton shot Carter during the course of an armed robbery, and while Melton's and Lewis's accounts of the robbery differ as to who masterminded the robbery, the testimony of both defendants was consistent as to three significant facts: (1) Melton was present during the robbery, (2) Melton held Carter at gunpoint, and (3) the gun that Melton used fired the fatal shot.  Additionally, the State presented evidence that Melton was found in possession of the gun, and the blood of the victim, who was shot at close range, was found on Melton's person.  Moreover, even if there was a struggle, Carter was entitled to defend himself in the

face of a threat with a deadly weapon. For these reasons, even if the jury discounted Lewis's trial testimony, it is improbable that Melton would be acquitted on retrial.

Similarly without merit is Melton's argument regarding the cumulative effect of the new evidence on the outcome of the penalty phase. Melton contends that if the jury discounted Lewis's testimony, he would receive a life sentence. However, Melton was sentenced to death based on a finding that he was previously convicted of a violent felony and that the murder was committed for pecuniary gain. While Melton is correct that the HAC and CCP aggravating circumstances are absent in his case, the prior violent felony aggravator was based on a first-degree murder that also involved a robbery and a shooting of the victim. In light of this especially strong aggravating factor, it is improbable that Melton would receive a life sentence.

## II. **Brady** and **Giglio** Claims

Melton also asserts that at the time of his trial, the State withheld evidence that it had negotiated and finalized the terms of a plea agreement with codefendant Lewis. At trial, Lewis testified that he had not secured a plea agreement with the State, although he hoped for leniency with respect to his role in Carter's murder. Melton maintains, however, that in 2013, Lewis admitted to defense investigators that there was a formal plea agreement and that he is now entitled to relief under

United States v. Giglio, 405 U.S. 150 (1972), and Brady v. Maryland, 373 U.S. 83 (1963). We affirm the circuit court's denial of relief.

Following the evidentiary hearing, the court entered an order denying relief which stated as follows:

> Whether considered pursuant to Brady or Giglio, Defendant has failed to show that any violation occurred. Although Defendant's motion alleges that Lewis admitted to having a deal with the State in exchange for his testimony, his testimony at the evidentiary hearing contradicts this claim. Lewis said at the hearing that there were no promises made to him by the State for his testimony at Defendant's trial. The Court accepts the testimony of Lewis and finds that he did not have an agreement with the State prior to testifying. While Lewis may have had an expectation of leniency, his hope for a lesser sentence in the future is an insufficient basis for relief. Melton, 949 So. 2d at 1010.

### Brady Claim

Melton is not entitled to relief based on his allegation of a Brady violation. "To establish a Brady violation, a defendant must demonstrate: '(1) the State possessed evidence favorable to the accused because it was either exculpatory or impeaching; (2) the State willfully or inadvertently suppressed the evidence; and (3) the defendant was prejudiced.' " Mordenti v. State, 894 So. 2d 161, 169 (Fla. 2004) (quoting Allen v. State, 854 So. 2d 1255, 1259 (Fla. 2003)). In order to demonstrate prejudice, the evidence must be material. Under a Brady analysis, "[e]vidence is material if there is a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

- 7 -

different.' " Id. at 170 (quoting Strickler v. Greene, 527 U.S. 263, 280 (1999)). "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quoting U.S. v. Bagley, 473 U.S. 667, 678 (1985)). "[T]his Court defers to the factual findings made by the trial court to the extent they are supported by competent, substantial evidence, but reviews de novo the application of those facts to the law." Lightbourne v. State, 841 So. 2d 431, 437 (Fla. 2003) (citing Stephens v. State, 748 So. 2d 1028, 1031-32 (Fla. 1999)).

Melton's Brady claim is not supported by competent, substantial evidence. First, he has not demonstrated that the State possessed evidence of a formal plea agreement with Lewis. While the defense investigators testified that Lewis admitted that there was a plea agreement at the time of Melton's trial, even their testimony conceded that Lewis did not provide details of the alleged plea agreement. Moreover, Lewis contradicted the investigators' assertions in his own testimony at the evidentiary hearing, and Lewis's hearing testimony was consistent with his testimony at Melton's trial.

Second, because Melton failed to prove by competent, substantial evidence that Lewis and the State negotiated a plea agreement prior to his trial testimony, he did not demonstrate that the State, either willfully or inadvertently, suppressed a

plea agreement.  Third, because Melton failed to show that the State willfully or inadvertently suppressed exculpatory or impeaching evidence, he has not demonstrated prejudice.  The jury was aware that Lewis was facing his own charges for Carter's murder, that he was given immunity for his testimony, and that he hoped for leniency in sentencing.  This evidence exposed Lewis's motivation to give self-serving testimony.  Melton is not entitled to relief under Brady.

## Giglio Claim

Similarly, Melton's Giglio claim does not entitle him to relief.  "Giglio stands for the proposition that a prosecutor 'has a duty to correct testimony he or she knows is false when a witness conceals bias against the defendant through that false testimony.' "  Ventura v. State, 794 So. 2d 553, 562 (Fla. 2001) (quoting Routly v. State, 590 So. 2d 397, 400 (Fla. 1991)).  In order to establish a Giglio violation, each of the following must apply: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material.  See Guzman v. State, 868 So. 2d 498, 505 (Fla. 2003).  The evidence is considered material "if there is any reasonable possibility that it could have affected the jury's verdict."  Tompkins v. State, 994 So. 2d 1072, 1091 (Fla. 2008) (quoting Rhodes v. State, 986 So. 2d 501, 508-09 (Fla. 2008)).  The defendant bears the burden of proving that the testimony was false and that the State knew of its falsity.  See Taylor v. State, 62 So. 3d 1101, 1115 (Fla. 2011) ("For both Brady

and Giglio claims, as with any other postconviction claim, the defendant ultimately carries the burden of establishing a prima facie case based upon a legally valid claim."). However, upon establishing that a prosecutor knowingly presented false testimony, "[t]he State, as the beneficiary of the Giglio violation, bears the burden to prove that the presentation of false testimony at trial was harmless beyond a reasonable doubt." Guzman, 868 So. 2d at 506. In other words, "the burden then shifts to the State to prove that there is not any reasonable possibility that the false testimony could have affected the judgment of the jury." Taylor, 62 So. 3d at 1115. Giglio claims present mixed questions of law and fact. This Court defers to those factual findings supported by competent, substantial evidence, but the application of the law to the facts is subject to de novo review. See Green v. State, 975 So. 2d 1090, 1106 (Fla. 2008).

Melton's Giglio claim is without merit. First, he has not presented competent, substantial evidence that Lewis provided false testimony at trial. During direct and cross-examination at trial, the State and the defense thoroughly questioned Lewis about whether he received any promise of preferential treatment in exchange for his testimony. Lewis testified that while he hoped that he would receive consideration for his testimony, no promises had been made regarding the disposition of the charges he faced. This testimony was consistent with Lewis's

testimony at the 2014 evidentiary hearing, which the circuit court found to be credible.

Second, because Melton did not demonstrate that Lewis's testimony was false, he failed to establish the prosecutor's knowledge of any such false testimony. Consequently, Melton has not established a Giglio violation. For these reasons, Melton is not entitled to relief.

Accordingly, we affirm the circuit court's order denying Melton's successive motion for postconviction relief.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Escambia County,
        W. Joel Boles, Judge - Case No. 171991CF000373BXXXX

Linda McDermott of McClain & McDermott, P.A., Estero, Florida,

        for Appellant

Pamela Jo Bondi, Attorney General, and Charmaine Millsaps, Assistant Attorney General, Tallahassee, Florida,

        for Appellee